PINKSTON, TRUSTEE FOR THE BENEFIT OF CREDI-
TORS OF HOLIDAY HOMES, INC. *v.* HIGHAM

[No. 163, September Term, 1960.]

514

*Decided March 20, 1961.*

*Motions for rehearing and revision of opinion and to delay issuance of mandate filed April 14, 1961, denied May 8, 1961.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, MARBURY and SYBERT, JJ.

Jack Pinkston, in proper person, for appellant.

No brief filed by the appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Montgomery County filed June 8, 1960, ratifying and confirm-

ing an auditor's account filed in a suit in equity for an accounting, showing a balance of $1,351.64 to be due from the appellant (original defendant and cross-plaintiff), Jack Pinkston, "Trustee for Holiday Homes, Inc.," to the appellee (original plaintiff and cross-defendant), Richard E. Higham. The order for appeal states that the appeal is from the above order of June 8, 1960, "as well as all previous adverse rulings of the Court in this Cause."

It would be profitless to review all of the voluminous and largely repetitious pleadings of the appellant. Some of them, we may add, appear to have been filed in disregard of Md. Rule 320 d 1 (b), requiring leave of court for amendments; four were filed after the order of June 8, 1960, and are not properly before us. Somewhat boiled down, the questions raised by this appeal relate to: (a) the jurisdiction of the trial court; (b) the procedure followed with regard to the auditor's hearing and report; and (c) the findings adverse to the appellant.

The appellant makes a great point that he is "Trustee for the Benefit of the Creditors of Holiday Homes, Inc.," and not "Trustee for Holiday Homes, Inc.," though he perforce admits having sometimes used the abbreviated form of title which, he says, was merely a matter of convenience. So far as the disposition of the present appeal is concerned, the question of the correct title seems of little moment.

This is the second case in which matters growing out of the deed of trust below mentioned have reached this court. In the first, *Briley v. Pinkston,* 215 Md. 417, 136 A. 2d 563, the salient facts with regard to the execution by Holiday Homes, Inc., and Holiday Homes Manufacturing Co., Inc., of a deed of trust dated March 25, 1955, for the benefit of their creditors, to Jack Pinkston, as trustee, are set forth by Judge Henderson (215 Md. 422-423). These companies were Delaware corporations which had offices in Washington, D. C. They entered into contracts for the sale of prefabricated houses, assembled them at a plant in Prince George's County, and did almost all of their construction work in Maryland; and about their only assets were contracts for unfinished build-

ings in various stages of completion, on which payment could not be obtained until full completion. The deed of trust contained a provision purporting to authorize the trustee to operate the business.

Higham had entered into a contract for the construction of a house on his lot at Mayo, in Anne Arundel County, but little progress had been made when financial difficulties overtook the Holiday Homes corporations and the deed of trust was executed. The contract price was $6,785.00, of which $800.00 had apparently been paid as a down payment. As a result of negotiations between Pinkston and Higham (following a circular letter from Pinkston as "Trustee for Holiday Homes, Inc."), it was agreed that Pinkston should complete construction of the house, with some changes in specifications under Higham's contract with Holiday Homes, Inc., expected to reduce the cost, for a price which Pinkston's construction man said was $5,659.23. Under this arrangement Higham paid Pinkston $4,200.00. After several weeks of construction work, when the house was still far from complete, Pinkston advised Higham that it could not be completed for the price contemplated. Higham asked for an accounting of the monies already paid; Pinkston claimed to have paid out more than $5,000.00 on account of the Higham job. Apparently by mutual consent, Pinkston ceased work on the house and Higham took over its completion.

On October 14, 1955, Higham filed his bill for an accounting in this case against Pinkston, Trustee for Holiday Homes, Inc., Pinkston, describing himself as "Trustee for the Benefit of the Creditors of Holiday Homes, Inc.," filed an answer and a cross-complaint. The latter was promptly answered by Higham. In January, 1956, the case was referred to an auditor, but nothing more appears on the docket until October 9, 1956, when Pinkston filed a motion to dismiss based upon alleged lack of equitable jurisdiction. No ruling seems to have been made on this motion at that time. On February 13, 1957, on petition of Higham, the court entered a show cause order requiring Pinkston to appear and account before the auditor on March 4, 1957. On that day Pinkston filed a "plea to the

jurisdiction" (not then acted upon) alleging that the "trusteeship" was domiciled in Prince George's County and seeking either a dismissal of the suit in Montgomery County or its transfer to Prince George's. For the moment we shall confine our attention to jurisdictional questions, as to which the appellant filed some further pleadings. The only one of these which we shall mention specifically was the last, a motion docketed May 5, 1960, to file an amended plea to the jurisdiction. This was overruled on May 27th. This action seems to have been confirmed by the final order filed June 8, 1960. It seems useless to enumerate all of the pleadings setting up the defendant-appellant's objections to jurisdiction, since all of them were either rejected explicitly by the order of June 8, 1960, or were rejected by necessary implication from the ratification of the auditor's account therein contained. We may note at once and really parenthetically that the appellant does not contend in his brief that the overruling of his motion to dismiss on the ground of alleged lack of equity jurisdiction was erroneous. (The motion is not even printed in the appendix and has no apparent merit. (Miller, *Equity Procedure,* § 721.) We regard it as abandoned.)

We find untenable the appellant's contention that the Circuit Court for Montgomery County was without jurisdiction over this case. He cites three cases in support of his argument: *Withers v. Denmead,* 22 Md. 135; *Cone v. East Baltimore Land & Bldg. Soc.,* 40 Md. 380; and *Woodcock v. Woodcock,* 169 Md. 40, 50, 179 A. 826. All three recognize the rule that where each of two courts has concurrent jurisdiction, the court in which suit is first instituted is entitled to retain jurisdiction and that the second court is without power to interfere. The *Withers* and *Woodcock* cases applied the rule; the *Cone* case held it inapplicable where the proceedings in the first court consisted of no more than the filing of an *ex parte* petition upon which no action had been taken prior to the institution of the suit in the second court. None of these cases, if otherwise applicable (which we do not decide), could possibly aid the appellant for the simple reason that not even his *ex parte* application for the assump-

tion by the Circuit Court for Prince George's County of jurisdiction over the administration of the Holiday Homes deed of trust was so much as filed, nor was any action thereon taken, until May, 1957, which was about a year and a half after the institution of the present suit. Up to that time Mr. Pinkston had filed the deed of trust for record in Prince George's County and had engaged in some litigation as trustee both in that County and in the District of Columbia. (See *Briley v. Pinkston, supra.*) Such activities were wholly inadequate to throw around his shoulders a mantle of immunity from suit outside of Prince George's County.

Nor are we informed of any other circumstance which would deny jurisdiction to the Montgomery County Circuit Court. Mr. Pinkston was a resident of that County. The letterhead on which he circularized Mr. Higham and other customers of Holiday Homes showed his office to be in Montgomery County and invited communication with him there. He was acting, he claims, by virtue of the deed of trust. Certainly he was not acting by the authority of any court, when he made the agreement with Mr. Higham. (Indeed, to us, it is at least not apparent that any court if exercising jurisdiction over the Holiday Homes trust, would have approved the agreement if asked to do so.) We note that among the items for which Mr. Pinkston claimed reimbursement was a telephone bill giving the number of his office in Silver Spring, Montgomery County. It is difficult to suppose that such a charge would have been incurred in connection with the Holiday Homes trust unless it were being administered at least in part in Montgomery County. If the "domicile" or seat of the trust were important, the location of the trustee's office would seem a pertinent factor in determining the question. 2 Beale, *Conflict of Laws*, § 297.1, p. 1023. The location of the "plant" in Prince George's County seems to have been of little importance in the construction of the Higham house, which was located in Anne Arundel County.

The rules as to the place where a defendant may be sued applicable at law (Code (1957), Art. 75, § 75) are also generally applicable in equity. *Evans v. Zouck,* 172 Md. 12, 16,

190 A. 523; *Zouck v. Zouck,* 204 Md. 285, 291, 104 A. 2d 573. It is apparent, we think, that Mr. Pinkston was sued in the proper county under those rules; but even if he had not been, his voluntary appearance would have cured such a defect, and there is no question as to such appearance both through his answer and his cross-bill long before he sought to attack the jurisdiction of the Circuit Court for Montgomery County. See *Evans v. Zouck, supra.* The mere fact that the Holiday Homes corporations, or one of them, may have had a plant in Prince George's County would not bar a suit elsewhere against the trustee, even assuming that he had title to it (as he did not prior to May 4, 1957, under *Briley v. Pinkston, supra*). See *Dorsey v. Omo,* 93 Md. 74, 48 A. 741, and comment thereon in *Evans v. Zouck, supra,* 172 Md. 12, 14. Cf. *Hanson v. Denckla,* 357 U. S. 235, 254, as to the importance of personal jurisdiction over a trustee.

We hold that the Circuit Court for Montgomery County had jurisdiction over this suit, and affirm its orders to that effect.

The remaining questions all pertain to the auditor's account and proceedings relating thereto.

At the hearing on March 4, 1957, before the auditor, the plaintiff examined Mr. Pinkston and his former construction boss on the Higham job, a Mr. Swift. Mr. Pinkston also cross-examined the latter extensively, but, at the time of adjournment for the day, reserved the right to cross-examine him further. Mr. Pinkston agreed to produce to the auditor vouchers necessary to substantiate payments in the total amount of $5110.47 shown by a statement submitted at the hearing. Subsequently, apparently on or about March 27, 1957, he submitted a two-page statement of account and a number of cancelled checks and one receipt. The statements show disbursements aggregating $5174.71, alleged to have been made by the defendant Pinkston on the Higham job. The auditor's report filed March 29, 1960, states in part: "Certain of these cancelled checks and the receipt your Auditor has accepted as primary proof of the expenditures claimed by the defendant. Certain other of the said vouchers do not bear upon their

face sufficient proof of their character or connection with the amount claimed to have been spent, and in the opinion of your Auditor have been disallowed."

On September 16, 1957, the plaintiff, Higham, filed a petition to require the defendant, Pinkston, to close his testimony and on that day the court entered an order (a copy of which is stated to have been served on Pinkston in open court on that same day) requiring both parties to close their testimony before the auditor on or before October 25, 1957. No further testimony was offered, and on the date just referred to the testimony taken on March 4, 1957, was filed in court.

On February 23, 1960, the auditor wrote Mr. Pinkston a letter in which he said that he had examined the vouchers submitted by Mr. Pinkston, that a number of them in the form of cancelled checks "do not prove their purpose on their faces," that he assumed that Mr. Pinkston would want to prove that they represented expenditures made exclusively for the construction of the Higham house, and that the letter was to afford Mr. Pinkston "an opportunity to select a date for a hearing at which you can offer additional testimony or other admissible evidence to prove that these cancelled checks should be accepted as vouchers in the case." The auditor also stated that he was writing Mr. Niles, counsel for Higham, asking him to attempt to agree with Mr. Pinkston on a date for a hearing convenient to both of them. He further stated that "failing agreement by you and Mr. Niles and notice to me of the date agreed upon, I shall fix a date in the near future and issue the necessary summons." On March 21, 1960, the auditor wrote Mr. Pinkston (sending a copy to Mr. Niles) as follows:

"I wrote you and Mr. Niles on February 23, 1960, offering to hold a hearing on the above case.
"I have not heard from you or Mr. Niles and I will therefore file the enclosed Auditor's Report in the case."

The statement that the auditor had not heard from Mr. Niles appears incorrect, since his report states that Mr. Niles

objected to any further hearing on the basis of the order to close the taking of all testimony by October 25, 1957, above mentioned.

Mr. Pinkston appears to have done nothing towards obtaining a hearing, even after he had been sent a copy of the report which the auditor was about to file, which showed the disallowance of a number of items claimed by Pinkston as disbursements on the Higham job. However, it is not shown that he waived his right to further cross-examination of the witness Swift or his right to testify himself or to produce other evidence in an attempt to substantiate the "vouchers" which the auditor rejected. Proceedings before an auditor are governed by Maryland Rules 525 and 595. Under Rule 595 f, "[w]here the auditor may be required to take testimony to be reported to the court, he shall observe and pursue the same mode and form of examination * * * as that prescribed by Rule 580 (Examiner)." Under Rule 580 f 4, "[t]he defendant shall not be compelled to proceed with the taking of his testimony until the plaintiff has finished or declared he has none to offer." The order of the late Judge Reeves of September 16, 1957, requiring the plaintiff and the defendant to close their testimony on or before the same date (October 25, 1957) cannot be reconciled with that Rule. As late as February 23, 1960, the auditor himself appears to have thought the defendant-appellant entitled to offer evidence. His subsequent closing of the proceedings was doubtless in deference to the order of September 16, 1957, upon which plaintiff's counsel relied in objecting to further testimony being taken.

Because of the error in that order we must set aside the order ratifying the auditor's account. We deem it appropriate, however, pursuant to Maryland Rule 871 a to remand the case without affirmance or reversal for further proceedings. First, we think, it should be determined, either by the court or by the auditor, whether the appellant did waive his right to further cross-examination and to produce evidence, or rather further evidence, on his own behalf. (He testified to some extent for himself while under examination by the plaintiff, and the vouchers which he later submitted, though not formally

introduced into evidence, were considered by the auditor and were filed with his report and account on March 29, 1960.) If there were such a waiver, a new order ratifying the auditor's account would appear to be in order. We attach importance to the findings of fact of a master (and the auditor here was practically acting as such in hearing the witness) where such findings are based upon his appraisal of the testimony of witnesses who appear before him and are adopted by the trial court. *Maryland Lumber Co. v. White*, 205 Md. 180, 196, 107 A. 2d 73.

The appellant's claim based upon the absence of an order *nisi* ratifying the auditor's account is without force. In the first place, he shows no need for such an order. He cites no Maryland Rule in support of his contention, and we find no requirement therefor in Rule 580 or Rule 595. If there be such a requirement in the rules of the trial court (even where actual notice of the filing of the account has been given to the only interested parties), the appellant has failed to bring the rule before us, and this court does not ordinarily take judicial notice of the rules of the several trial courts. Moreover, and this seems more important, the appellant had actual notice of the filing of the report even before it was filed and had a full hearing on his motion to strike it out before the order of ratification was signed.

The appellant's full-scale attack on the credibility of the witness, Swift, was launched, so far as the record shows, after the auditor's report was filed. It, too, would seem to be barred from consideration by waiver, if there were a waiver. That we do not know. Even if itself admissible (which we do not now undertake to decide), this attack seems to go to the weight, rather than the admissibility of Swift's testimony. Furthermore, some of the appellant's claims, among them a claim for $300 apparently based upon commissions of 10% on amounts aggregating $3,000 paid to him by Higham, seem to have been disallowed because of insufficiency of the appellant's proof of their justification and not because of any testimony of Swift.

If it be determined that the appellant had not waived his

right to a further hearing before the auditor, the case should be remanded to him for the taking of additional testimony and the submission of a new or further report based upon the findings resulting therefrom.

Notwithstanding the fact that we feel constrained to remand this case, we think that the dilatory tactics pursued by the appellant in seeking to raise jurisdictional points which were at best without substance, and which we think were also sought to be raised too late, have been major factors contributing to the occasion for this appeal and have greatly enlarged the record. We, therefore, deem it proper, in the exercise of the power under Maryland Rule 882 a to award costs in our discretion to direct that three-fourths of the costs of this appeal be paid by the appellant, regardless of the result on remand, and that the remaining one-fourth abide the event of the further proceedings on remand in this manner: if the final decree shall find any sum to be due to the appellant or nothing to be due by him, the appellee shall pay the whole of said one-fourth; but if the final decree shall find any sum to be due by the appellant to the appellee, then the appellant shall pay such part of said one-fourth of the costs as shall bear the same ratio to the whole of said one-fourth as the principal amount due by him shall bear to the principal sum of $1,351.64 found by the auditor's report (and confirmed by the court order appealed from) to be due by the appellant to the appellee, and the appellee shall pay the remainder, if any, of such one-fourth part of the costs of this appeal.

> *Orders overruling all objections to jurisdiction and denying leave to file amended plea to jurisdiction affirmed; case remanded as to liability, without affirmance or reversal, for further proceedings in accordance with the opinion herein; three-fourths of the costs of this appeal to be paid by the appellant; the remaining one-fourth thereof to abide the event of such further proceedings and to be paid as provided in said opinion.*