BRIS REALTY CO., et al. *v.* PHOENIX SAVINGS & LOAN ASSN., INC.

[No. 158, September Term, 1964.]

86

*Decided March 12, 1965.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, HORNEY and SYBERT, JJ., and KEATING, J., Associate Judge of the Second Judicial Circuit, specially assigned.

*Eugene Hettleman* for appellants.

*Herbert H. Rosenbaum* for appellee.

KEATING, J., by special assignment, delivered the opinion of the Court.

The appellee, Phoenix, went into conservatorship and then into reorganization under the jurisdiction of the Circuit Court of Baltimore City. Under the plan of reorganization, as ordered by the court, claimants, whose claims against the appellee were disputed by the latter, were directed to place such disputed claims in issue before a special master in chancery who was empowered by the order of his appointment "to take testimony and make a final determination, subject to further orders of this court, on the question of whether such claims should be recognized as legal liabilities of Phoenix." The appellants, who were claimants, pressed their disputed claims before the special master, who heard voluminous testimony and made certain final determinations in respect thereto. As to some of these final determinations, the appellants excepted and the exceptions were heard by the chancellor who overruled them and affirmed the master's findings. The appellants assign four grounds of error:

(I). *The refusal of the chancellor to permit the appellants to take testimony before him on the exceptions.* The record shows that the exceptions, as filed by the appellants to the special master's report, were general in form and failed to point out any finding of fact not supported by the testimony before the master, or any law misapplied by him to such facts in arriving at his allowance or disallowance of the respective claims.

The appellants take the position that as to matters contained in those parts or paragraphs of the master's report to which they have generally excepted, they had the right to present testimony before the court *de novo,* citing *Egerton v. Reilly,* 1 G. & J. 385, and *Worthington v. Hiss,* 70 Md. 172, as authority. These two cases furnish no such authority. In *Egerton,* this Court merely held that the lower court erred in referring a matter to an auditor before preliminary pleadings had brought the case to issue; and in *Worthington,* the appeal was from a decree remanding a case to an auditor with specific instructions to state an account upon principles laid down in the opinion accompanying the decree. Both sides appealed from the directions given

to the auditor and no procedural question with respect to testimony either before the auditor or before the court was raised, and nowhere does it appear that the trial court, in hearing exceptions to the auditor's account before its remand, heard any testimony. The appellants also cite *Sewell v. Sewell,* 218 Md. 63, for the proposition that a master is not a judicial officer and therefore the court cannot delegate its judicial function to a nonjudicial officer. The short answer to this is that the *Sewell* case dealt with testimony taken before an *examiner,* not a master. The powers and duties of examiners and masters are not coextensive. The former merely records testimony for perusal of the court, see Miller, *Equity Procedure,* p. 262, *et seq.,* whereas the latter, properly called an auditor and master, is an adviser of the court, makes findings, reports to the court and suggests the nature and propriety of the decree. Miller, *op. cit.,* p. 654.

The cases of *Maryland Lumber Co. v. White,* 205 Md. 180, *Pinkston v. Higham,* 224 Md. 513, and *Alexander v. Hergenroeder,* 226 Md. 559, all dealing with reports of masters in chancery, clearly indicate our view that a master's findings are *prima facie* correct. When exceptions to auditors' reports are filed, they should point out the particular error or errors objected to and general exceptions cannot be considered. Miller, *op. cit.,* p. 643; *Scrivener v. Scrivener,* 1 H. & J. 743; *Young v. Omohundro,* 69 Md. 424. We believe this is equally true of exceptions to a master's report. One of the purposes of seeking the advice and recommendations of an auditor and master is to conserve the time of the court. If claimants had the right to offer new or additional testimony before the court, not only would there be no saving of the court's time but, perhaps, the whole structure of the auditor's and master's report would be worthless, thus requiring a remand and revision. Exceptions to a report of an auditor and master will not be sustained unless his findings of fact from the evidence are clearly erroneous, or unless he misapplies the law to his findings of fact. *Alexander v. Hergenroeder, supra.*

(II). *That the chancellor erred in affirming the action of the auditor and master in admitting the testimony of Clarence W. Sharp, Esq.* The appellants' contention is based on the fact that

Mr. Sharp, a member of the bar, while appearing as one of the attorneys of record for the appellee, Phoenix, before the master and after having cross-examined some of the appellants' witnesses, struck out his appearance for the appellee and took the witness stand to testify as the sole witness for the appellee.

The record shows that Mr. Sharp had gained a thorough and unique knowledge of the voluminous and intricate dealings between the appellants and the appellee, he having acted as an assistant to the counsel for the court's conservator during the period of the appellee's conservatorship; that after the reorganization of the appellee was authorized and the instant proceedings before the master were instituted, the appellee engaged Mr. Sharp, because of his familiarity with the books, records and dealings of the appellee with the appellants, to act as co-counsel in representing its interest; that he assisted in preparing the appellee's answers to certain pretrial interrogatories and sat at the trial table before the master with his co-counsel before the latter became ill, and thereupon did cross-examine some of the appellants' witnesses. The appellants complain that as he must have known that he was expected to testify for the appellee, it was improper for him to take part in the trial as counsel, citing *Snyder v. Hammer,* 180 Md. 690 (decision reported without opinion), 23 A. 2d 653, 655 (opinion reported in full), wherein it was said "this Court expresses agreement with the chancellor's disapproval of the practice of counsel's giving testimony to support the cases in which they are engaged except when the need of so doing has not been foreseen." While we affirm our pronouncement in *Snyder,* we point out two things: the practice is looked on with disfavor except in unusual circumstances, but such testimony is not inadmissible, Jones, *Evidence* (2d ed.), § 754, 58 Am. Jur., *Witnesses,* § 152; and, in the instant case, Mr. Sharp was former assistant to counsel for the court's conservator, and thus his testimony was based upon information gained as an officer of the court. We see no abuse of discretion in allowing him to testify.

(III). *That the chancellor erred in affirming the master's disallowance of the appellants' claims for certain deficiencies in mortgage foreclosure proceedings.* Without detailing at length the rather complicated dealings between the appellants and ap-

pellee, it will suffice to point out that there were certain refinancings of purchasers under land installment contracts held by the appellants as vendors. The purchasers, who were evidently ignorant as to their rights, were given deeds for the properties and were induced to borrow from the appellee sufficient money by way of a new mortgage to enable the purchasers to pay off existing first mortgages against their properties as well as the balance due appellants on the installment contracts. The first mortgages had been placed on the properties by the appellants before they sold the properties to the contract purchasers and the sales were not subject to said first mortgages, nor were the purchasers liable for the amounts due under them. However, they, no doubt to their sorrow, executed the new mortgages and trusted the appellee to properly disburse the proceeds. The appellee handled the disbursal of funds involved in the refinancing and, instead of paying off the first mortgages, merely continued to pay the amortization payments specified therein and eventually defaulted in meeting even these payments, whereupon the first mortgages were foreclosed and the mortgage sales, bringing less than the balances due, resulted in deficiencies for which the appellants, as mortgagors, were liable.

The appellants claim that even if there were not an express promise by the appellee to pay off the first mortgages to the relief of appellants, there was an implied promise to do so, citing *Rosenthal v. Heft,* 155 Md. 410, as authority. The citation is not apposite. In *Rosenthal,* this Court held that where a deed reciting a consideration of "$5.00 and divers other good and valuable considerations" conveyed certain property "subject to the legal operation and effect" of two specified mortgages, the court could look to the preceding written agreement of sale to find the real consideration; and where the terms of sale showed the total purchase price to have been calculated on the theory that the purchaser would assume and pay the existing mortgages there was an implied promise to do so to the relief of the seller as mortgagor. In the instant case, the master found, from a mass of conflicting and inconsistent testimony on the point, that there was no express agreement on the subject but there was an implied agreement that the appellants were to remain liable

on the first mortgages. This finding is supported by substantial evidence in the record; we feel that the chancellor did not err in ratifying the report in this respect.

(IV). *That the chancellor erred in confirming the master's finding, that the appellants' claim for consequential damages alleged to have resulted from failure of the appellee to pay the appellants various sums of money when due, were too speculative to be allowed.* The foundation for this claim is that if the appellee had made payment of certain alleged claims, when due, the appellant would have had money with which to make payments on various and sundry *other* mortgage debts which the appellants owed to third parties and which were foreclosed and resulted in losses to the appellants.

The appellants concede that ordinarily a breach of a contract to pay money at a specified time gives rise to a claim only for the amount due, but contend that where special circumstances are known to both parties from which it might reasonably be assumed that, upon breach, such damage would naturally result, then such special consequential damages are allowable. They cite *Strasbaugh v. Steward Sanitary Can Co.,* 127 Md. 632. The master and chancellor did not find from the record, nor do we, any special circumstances known to the parties that would transform these claimed damages from the category of utter speculation to reality. Even if the appellants' loss on each property foreclosed might be mathematically calculable, it does not necessarily follow that such loss was occasioned by the appellee's failure to pay the appellants. We see no error by the chancellor in this respect.

For the reasons assigned, the order appealed from must be affirmed.

*Order affirmed; appellants to pay the costs.*