# CHARLES EARL WENGER *v.* SUSAN WICKERSHAM WENGER

[No. 722, September Term, 1978.]

*Decided June 7, 1979.*

The cause was argued before MOYLAN, COUCH and MACDANIEL, JJ.

*Allen J. Kruger,* with whom was *Paul J. McGarvey* on the brief, for appellant.

*Robert R. Michael,* with whom was *John V. Long* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

This appeal puts squarely before us the proper function of the Chancellor vis-a-vis a Report and Recommendation of a Domestic Relations Master. At issue specifically in this case is the amount of money to be awarded in 1) child support pendente lite and 2) alimony pendente lite. The Domestic Relations Master made initial recommendations in these regards. The Chancellor raised both amounts. The extensive testimony taken in a hearing before the Domestic Relations Master and the extensive findings of fact made by him were such that the evidence was legally sufficient to support either the lower award or the larger award. Neither the determination of the lesser figure nor of the greater figure represented an abuse of discretion so as to require reversal.

The question is clearly one of who has the ultimate discretion. If the Chancellor may override the recommendations of the Master only where the Master was clearly erroneous in his findings of fact or abused his discretion, the Chancellor here was wrong. If, upon the other hand, the Chancellor, based upon his own findings of fact or upon the findings of fact made by the Master, may exercise his own discretion as to the ultimate amount of the awards, the Chancellor here did not abuse his discretion and will not be reversed.

The Appellant, Charles Earl Wenger (Husband), and the Appellee, Susan Wickersham Wenger (Wife), were married on July 15, 1967. Two children were born of that marriage, a girl and a boy, who at the time of this litigation were eight and seven years old, respectively.

On July 22, 1977, the Wife sued the Husband for an absolute divorce, for child custody, child support and alimony, the last three on both a pendente lite and permanent basis. The first procedural step was a Show Cause Order directed to the Husband inquiring why he should not comply with the pendente lite relief prayed. On September 18, 1977, the

Husband filed an answer. On December 28, 1977, the issues of pendente lite custody, child support and alimony came on for a hearing before Domestic Relations Master Louis Cohen. Because of the length of the testimony, the hearing could not be concluded in a single day and was continued until March 29, 1978. On May 2, 1978, the Report of the Domestic Relations Master was filed.

In reviewing the Master's Report, it will assist later analysis if we keep distinct his five pages of "Findings of Fact" and his ½ page of "Recommendations." As we shall discuss more fully, the degrees of deference due the two functions of the Master — that is, the fact-finding function and the recommending function — differ markedly. Based upon his findings, the Master recommended that temporary child custody be awarded the Wife. The Husband does not dispute this recommendation. Based upon his findings, the Master recommended that child support pendente lite be in the amount of $600 per month. The Husband took exception to this, claiming the figure to be excessive. The Wife also took exception, claiming the figure to be inadequate. Based upon his findings, the Master recommended that the Wife be denied alimony pendente lite. The Wife took exception to this.

The Report of the Domestic Relations Master, together with the exceptions filed thereto by both Husband and Wife, came before Judge Stanley B. Frosh, sitting in Chancery for Montgomery County. Judge Frosh did not find it necessary to convene a hearing for additional or de novo fact-finding. He proceeded to fashion his ultimate decree on the basis of the Report and its findings of fact, the exceptions taken to that Report and "all relevant facts." The option of not convening a hearing is made clear by Rule S 74.f.4 of the "Court Rules — Sixth Judicial Circuit of Maryland," which provides, in pertinent part:

> "Upon the filing of exceptions pursuant to this section, the proceedings shall be referred to the Court. *The Court shall then rule upon exceptions on the record, unless it shall determine that a hearing is required,* in which event the Court shall refer the proceedings and the exceptions to the Assignment

Office for the scheduling of a hearing on the exceptions and the notification of counsel." (Emphasis supplied)

The propriety of this option was affirmed by us in *Rand v. Rand,* 33 Md. App. 527, 365 A. 2d 586 (1976), *vacated on other grounds,* 280 Md. 508, 374 A. 2d 900 (1977), where Judge Menchine said for us, at 33 Md. App. 535:

"Accordingly, we see no illegality or impropriety in the enactment of a local rule leaving to the discretion of the trial court the question whether a court hearing upon the exceptions is necessary or desirable."

In making his ultimate decision on the question of child support pendente lite, Judge Frosh made it very clear that his factual predicate was "the record" made before the Master, as well as the Report of the Master and the Exception taken to it:

"The Court has examined the Report, Exceptions and all relevant facts in reaching its decision. The Court is of the opinion that the record reflects the actual needs for the support and maintenance of the minor children exceed the amount determined by the Master and that the Husband can and should contribute, *pendente lite,* the sum of $900.00 per month and that *the Master clearly erred in his recommendation.* " [1] (Emphasis supplied)

We note at the outset that the record made before the Domestic Relations Master was ample to support either the Chancellor's figure of $900.00 per month or the Master's figure of $600.00 per month. Itemized monthly expenses for

---

[1]. The use of the language underlined is unfortunate. There was nothing "erroneous" about the Master's recommendation. It was rather the case that the Chancellor, in the appropriate exercise of his own discretion, simply chose not to follow it. That by no means implies that the recommendation was not within the legitimate range or was somehow "erroneous." Sometimes to be followed and sometimes not to be followed is of the very nature of the thing — "recommendation." When a variety of legitimate options are available, the ultimate and necessary choice of one does not imply that those not chosen were less than legitimate.

the children tended to show a monthly need of $300.00 for anticipated rent; $236.00 for food; $120.00 for clothing; $78.00 for medical needs; $51.00 for transportation; $116.00 for recreation; $68.00 for life and accident insurance; $5.00 for telephone; $22.00 for incidentals; $250.00 for child care; $40.00 for school supplies; $8.00 for gifts; and $105.00 for dental-orthodontia needs, a total of $1399.00 per month. The Master concluded that the "needs appear inordinate." He made a "reasonable readjustment of the needs of the children" so that they should not exceed $600.00 per month. Part of the inevitable balancing was the net monthly income of the Husband. In addition to the salary of the Husband, substantial assets were shown in him — the ownership of nine warehouses. The Chancellor balanced the Husband's ability to pay against the need of the children and came up with $900.00 per month, which was also substantially below the $1399.00 per month claimed by the Wife. Both the Chancellor's figure and the Master's figure were within the legitimate discretionary range. Provided only that the right officer of the court make the determination, either determination would be upheld upon appellate review.

In making his ultimate decision on the question of alimony pendente lite, Judge Frosh again made it very clear that his factual predicate was "the record." He awarded the Wife $300.00 per month as alimony pendente lite.

> "As to the issue of alimony, *pendente lite,* the Court finds that *the Master erred* [2] in his recommendation in denying alimony and that the Plaintiff has actual need for personal support. Based upon the record's description of Defendant's actual assets, the Court finds that Defendant has the ability to pay alimony, *pendente lite,* to Plaintiff in the sum of $300.00 per month." (Emphasis supplied)

Once again, we note that the record made before the Domestic Relations Master was ample to support either the Chancellor's figure of $300.00 per month ($926.00 minus

---

2. See n. 1 *supra.*

$660.00) or the Master's figure of zero ($705.00 minus $720.00). The Wife showed monthly expenses of approximately $926.00 for herself and claimed a net monthly income of $660.00. Using her financial statement for the first 11 months of the year and then dividing by 11 the Master concluded that the Wife's monthly income was $720.00. The Master chose to discount a $200.00 per month figure for anticipated income tax on the alimony and disallowed a $25.00 per month figure for life and accident insurance. The Chancellor allowed these figures to enter into his own calculation. Once again, provided only that the right officer of the court make the determination, either determination would be upheld upon appellate review as not being an abuse of discretion.

The appellant, articulating it most explicitly in his reply brief, seeks to analogize the Chancellor vis-a-vis the Master to an appellate court vis-a-vis a trial court:

> "[T]he Chancellor set aside the decision of the Master without showing that the Master's findings were clearly erroneous. At a minimum, the Chancellor should be required to make the requisite showing that the Master's findings were clearly erroneous before setting them aside.
>
> The 'clearly erroneous' standard of review set forth in *Bris Realty* is the same as that under Maryland Rules 886 and 1086 applicable to appellate courts. Since there are few reported cases on the application of the standard to the relationship of master and chancellor, however, and there is an abundance of case law under Rule 1086 applying the standard, Rule 1086 case law is cited as analogous."

The appellant, in reply brief, goes on:

> "Furthermore, the function of the reviewing court [in this case, the Chancellor] is 'not to determine whether, on the evidence, (it) might have reached a different conclusion, but rather to determine from the evidence, and the proper inferences therefrom,

whether it was legally sufficient to warrant the finding' of the Master."

Despite the presence of the phrase "clearly erroneous" as a common factor, the analogy between the two relationships is a false and deceptively treacherous one. A given set of facts does not lead mechanically to a single, automatic disposition but may support a range of discretionary dispositions. When an appellate court, absent clear error, defers to a trial court, it defers not only to the fact-finding but to any legitimate verdict, disposition or judgment emanating from that fact-finding. The function of the chancellor vis-a-vis the master is quite different. He may, of course, order *de novo* fact-finding in whole or in part. Where he chooses to rely exclusively upon the report of the master, however, he should defer to the fact-finding of the master where that fact-finding is supported by credible evidence and is not, therefore, clearly erroneous. The chancellor, however, (unlike the appellate court) always reserves unto himself the prerogative of what to make of those facts — the ultimate disposition of the case.

Chancellors — as judicial officers — may never delegate away a part of the decision-making function to a master — a non-judicial officer. As Judge Smith put it starkly for the Court of Appeals in *In Re Anderson,* 272 Md. 85, 321 A. 2d 516, 527 (1974), "Masters are not judges and, therefore, are not vested with any part of the judicial power of the State." *Anderson* quoted with approval *Boston v. Nichols,* 47 Ill. 353, 359:

> "It is not the province of the master to adjudge and finally determine upon the rights of the parties. That belongs to the chancellor, and he cannot delegate it to another. The master is a ministerial and not a judicial officer."

In *Swisher v. Brady,* 438 U. S. 204, 98 S. Ct. 2699, 57 L.Ed.2d 705, 711 (1978), the Supreme Court summarized both *Anderson* and the Maryland law:

> "Central to this holding was the court's conclusion that masters in Maryland serve only as ministerial

assistants to judges; although authorized to hear evidence, report findings and make recommendations to the judge, masters are entrusted with none of the judicial power of the State, including the sine qua non of judicial office — the power to enter a binding judgment."

If the chancellor had no choice but to affirm the recommendation of the master (or his finding of the ultimate, conclusory fact which is indistinguishable from the recommendation) unless it was "clearly erroneous," this would be the forbidden delegation of the judicial function. That this may never be done was made clear for this Court by Judge Morton in *Ellis v. Ellis,* 19 Md. App. 361, 365, 311 A. 2d 428:

"Litigants . . . in all judicial proceedings, are entitled to have their cause determined ultimately by a duly qualified judge of a court of competent jurisdiction. Md. Const., Art. IV, § 1; Md. Code, Art. 26, § 30; Md. Rule 71 a. While the system of resorting to Masters is one of long standing and undoubtedly has salutary effects resulting in the more expeditious dispatch of the judicial process, the system cannot supplant the ultimate role of judges in the judicial process itself."

On the other hand, the chancellor may delegate to a master the job of at least tentative [3] fact-finding. In the interest of conserving valuable judicial resources,[4] much laborious and time-consuming fact-finding has traditionally been carried out in the equity courts by masters (including auditors,

---

**3.** The merely tentative nature of this delegated fact-finding was made clear by Judge Smith in *In Re Anderson, supra,* at 321 A. 2d 527:

"We have pointed out that . . . under the procedure generally where masters are involved, a master hears evidence and then reports his findings of fact and his recommendations to the chancellor. We have also pointed out that a master's findings do not become binding until approved by a judge of the court to which he reports."

**4.** "One of the purposes of seeking the advice and recommendations of an auditor and master is to conserve the time of the court."

*Bris Realty v. Phoenix,* 238 Md. 84, 89, 208 A. 2d 68 (1965).

referees, commissioners and examiners). In recognition of this valuable function, our case law is replete with statements about the deference that will be paid to the findings of fact by the master, who heard the witnesses and observed their demeanor, unless such fact-finding is clearly erroneous. *Bris Realty v. Phoenix, supra,* at 238 Md. 89 (and cases there cited). This is based upon the sound principle that the master saw and heard the witnesses and was able to make the subtle judgments based upon appearance, upon tone of voice, upon even non-verbal communication, etc. that are never available upon the pages of a transcript as perused after the fact either by a chancellor in his chambers or an appellate court upon later review.[5] What must be carefully observed, however, is that the great deference is paid to the fact-finding of the master [6] as opposed to the recommendation of the master. Upon his findings of fact, the master recommends an ultimate disposition. Upon those same findings of fact, the chancellor must make his own independent disposition. He may be

5. See *Sewell v. Sewell,* 218 Md. 63, 71, 145 A. 2d 422 (1958).

6. Even here, the careful reader of case law must never wrench statements, and the tone of statements, loose from their generative procedural context. *Bris Realty v. Phoenix, supra,* is regularly quoted, as it is in this case, for the proposition:

> "The cases of *Maryland Lumber Co. v. White,* 205 Md. 180, *Pinkston v. Higham,* 224 Md. 513, and *Alexander v. Hergenroeder,* 226 Md. 559, all dealing with reports of masters in chancery, clearly indicate our view that a master's findings are *prima facie* correct. ... Exceptions to a report of an auditor and master will not be sustained unless his findings of fact from the evidence are clearly erroneous, or unless he misapplies the law to his findings of fact. *Alexander v. Hergenroeder, supra."*

*Bris Realty* and all three of the cases it cites dealt with situations where the chancellor approved and adopted the findings and the recommendations of the master and where the losing party was seeking, at the appellate stage, to attack the combined action of chancellor and master. The deference, expressed in these cases, for the appellate court vis-a-vis the trial court is not uncritically transferable to the chancellor vis-a-vis the master. Yet just such imprecision of thought is frightfully rampant in trial and appellate advocacy. Less dangerous than *Bris Realty* is the more careful wording of Chief Judge Brune in *Maryland Lumber Co. v. White, supra,* at 205 Md. 196:

> "The master in this case saw and heard the witnesses and made his report on the facts and the law which the Court approved and adopted after hearing exceptions and objections from both sides; and judgment was entered in accordance with the master's findings and recommendations. *Findings of fact so made and approved should not be set aside by this Court unless clearly erroneous."*
> (Emphasis supplied)

guided by the recommendation of the master but he is no more than guided.

In *Bar Association v. Marshall,* 269 Md. 510, 515-516, 307 A. 2d 677 (1973), Judge Digges well analyzed the function of the master's fact-finding:

> "This conflict presents a question for determination initially by the hearing panel and then by this Court. . . . In resolving· this conflict in the testimony, we consider *the findings of fact* of the hearing court in support of its recommendation to have, before us, a similar force and effect to those contained in a master's report in equity. *See In Re Member of Bar,* 226 A. 2d 705 (Del. 1967). Previous opinions of this Court have discussed *the importance to be attached to the findings of fact in a master's report* by the ultimate trier of fact. In those cases we have said that although the report is only advisory, the court should give full consideration to it, *particularly with respect to the credibility of witnesses,* where the testimony is conflicting. And, the master's *findings of fact* from the evidence are prima facie correct and they will not be disturbed unless determined to be clearly erroneous. *Bris Realty v. Phoenix,* 238 Md. 84, 89, 208 A. 2d 68 (1965); *Alexander v. Hergenroeder,* 226 Md. 559, 560, 174 A. 2d 580 (1961); *Pinkston, Tr. v. Higham,* 224 Md. 513, 522, 168 A. 2d 712 (1961); *Maryland Lumber Co. v. White,* 205 Md. 180, 196, 107 A. 2d 73 (1954)." (Emphasis supplied)

Indeed, *Bar Association v. Marshall* is the perfect vehicle to illustrate the dichotomy between the fact-finding function and the recommending function. The Court of Appeals was entertaining a disciplinary proceeding under its original jurisdiction. It transferred the proceedings to a specially designated three-judge panel of the Supreme Bench of Baltimore City for a hearing and recommendation as to proper disposition. That panel conducted a hearing and made its recommendation. It also forwarded "a summation of the

factual findings which constitute the judges' reasons for their recommendation." 269 Md. at 512. The Court of Appeals first analogized its relationship to the three-judge panel, in such a disciplinary proceeding, to that of a chancellor to a master in equity. "[W]e consider the findings of fact of the hearing court in support of its recommendation to have, before us, a similar force and effect to those contained in a master's report in equity." 269 Md. at 516.

On one critical point, the respondent Marshall disputed the hearing panel's finding of fact. The hearing panel had indicated that on that disputed fact, it did not believe Marshall. It was with direct reference to its adoption of the fact-finding of the hearing panel on this disputed fact that the above-quoted language about not disturbing the findings of fact unless clearly erroneous was written. The Court of Appeals, as the analogue of a chancellor in equity, deferred to the fact-finding of its designated hearing panel and said explicitly, "Accordingly, we adopt the hearing court's findings of fact as our own." 269 Md. at 516. Notwithstanding this full adoption of the panel's fact-finding, when it came to the accompanying recommendation, the Court of Appeals went its own way:

> "[T]he hearing court . . . recommended that he be suspended from the practice of law for one year. But, *from the facts found by the hearing court and adopted by us,* we conclude that Marshall's actions violated more than just that Canon. . . . *[W]e have decided that we cannot accept the recommendation of the hearing court;* rather the extreme sanction of disbarment must be imposed." 269 Md. at 517-518. (Emphasis supplied)

Deference to the fact-finding does not imply necessary deference to the recommendation. Indeed, undue deference in this latter regard was roundly condemned by *Ellis v. Ellis, supra,* at 19 Md. App. 366:

> "His action in signing the order was no more than a *pro forma* adoption of the Master's recommendation. The appellant, in our opinion, was

entitled to more than this under our judicial system. It was her right, not accorded here, to have an independent review by the Chancellor of the evidence and testimony taken before the Master, and it was her right to have the benefit of the Chancellor's judgment, as distinguished from the Master's alone. . . ."

In one last effort to lock the chancellor in to what the master had recommended, the appellant treats the ultimate disposition as little more than the ineluctable conclusion from the fact-finding. In this regard, he confuses first-level facts with more abstract, second-level, conclusory or dispositional facts. A chancellor may defer to the master on such first-level facts as that a husband makes $50,000 a year; the yearly orthodontia bill is $1500; the rent is $300 a month; the bank account of thus and so is thus and so. On the other hand, such second-level, conclusory "facts" as the wife's ultimate need or the husband's ultimate ability to pay are dispositional in nature and are the ultimate province of the chancellor. Although in a different context, we made just such a semantic distinction in *Walker v. State*, 12 Md. App. 684, 694-695, 280 A. 2d 260 (1971):

"Where the resolution of a purely factual question is all that is involved, we, of necessity, give great weight to the finding of the hearing judge, and his decision will not be disturbed on appeal unless we find a clear abuse of discretion. The preliminary decision on the admissibility of a confession, however . . . is 'a mixed question of law and fact.' . . . It is, therefore, a situation 'where a conclusion of law as to a [constitutional] right and a finding of fact are so intermingled as to make it necessary, in order to pass upon the [constitutional] question, to analyze the facts.' . . . We accord 'an appropriate and substantial effect to [the trial court's] resolutions of conflicts in evidence as to the occurrence or non-occurrence of factual events and happenings. . . . But . . . we cannot be precluded . . . from

> determining whether the circumstances under which the confession was made were such that its admission in evidence amounts to a denial of due process.' . . . What we mean, therefore, when we say that we have the obligation to make an independent, reflective constitutional judgment on the facts whenever a claim of a constitutionally-protected right is involved is that, although we give great weight to the findings of the hearing judge as to specific, first-level facts (such as the time that an interrogation began, whether a meal was or was not served, whether a telephone call was requested, etc.) we must make our own independent judgment as to what to make of those facts; we must, in making that independent judgment, resolve for ourselves the ultimate, second-level fact — the existence or non-existence of voluntariness."

What the appellant here seeks to treat as fact-finding would be conclusive as to what the ultimate dollar amounts of child support and alimony pendente lite, of necessity, would have to be. That final determination (whether deemed a second-level, conclusory fact or not) remained in the discretion of the Chancellor.

That Judge Frosh had an adequate factual predicate for his ultimate disposition is not in dispute. The appellant's contention that a chancellor must "listen to the recorded testimony of the proceedings or read a transcript of the proceedings before the Domestic Relations Master in its entirety" is without any support in law. In *Rand v. Rand, supra,* the chancellor "considered the report itself [of six pages, 33 Md. App. 537] with accompanying exhibits and *has generally reviewed* the two files." 33 Md. App. at 529. (Emphasis supplied) It seems apparent from *Bar Association v. Marshall, supra,* that what was reviewed was "the summation of the factual findings which constitute the judges' reasons for their recommendation." 269 Md. at 512. In *Ellis v. Ellis, supra,* the thing that was condemned was the

total lack of any factual review on the part of the chancellor. We said, at 19 Md. App. 363:

> "It is equally clear that the so-called report of the Master contained no summary of the testimony adduced at the hearing and set forth no findings or basis for his recommendation. In fact, the report was simply a recommendation, without supportive reasons of any nature."

The clear implication is that a summary of the evidence would have sufficed.

In the case at bar, there were five pages of "Findings of Fact." Judge Frosh explicitly set forth the factual predicate for his disposition:

> "The Court has examined the Report, Exceptions and all relevant facts in reaching its decision."

We see no error.

*Judgment affirmed; costs to be paid by appellant.*