IN THE MATTER OF A.B., A MINOR.

CLARK COUNTY DEPARTMENT OF FAMILY SERVICES, PETITIONER, v. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE FRANK P. SULLIVAN, DISTRICT JUDGE, RESPONDENTS, AND RAMONA B.; AND GREGORY B., REAL PARTIES IN INTEREST.

No. 58048

December 27, 2012                    291 P.3d 122

*Steven B. Wolfson*, District Attorney, and *Ronald L. Cordes*, Deputy District Attorney, Clark County, for Petitioner.

*Aaron D. Grigsby*, Las Vegas, for Real Parties in Interest.

Before DOUGLAS, GIBBONS and PARRAGUIRRE, JJ.

## OPINION

By the Court, GIBBONS, J.:

In this opinion, we address the juvenile court's[1] role when reviewing an objection to a dependency master's findings of fact and recommendation in an abuse and neglect proceeding. Although the juvenile court may adopt the master's findings of fact unless they

---

[1]NRS 62A.180(1) states: '' 'Juvenile court' means each district judge who is assigned to serve as a judge of the juvenile court pursuant to NRS 62B.010 or court rule.''

are clearly erroneous, a master's findings and recommendations are only advisory, and the juvenile court is not obligated to adopt them. The juvenile court ultimately must exercise its own independent judgment when deciding how to resolve a case. In the underlying matter, the juvenile court sustained the objection, based on the overall evidence, and dismissed the abuse and neglect petition. As we perceive no abuse of discretion by the juvenile court, we deny the petition.

## FACTS AND PROCEDURAL HISTORY

The underlying proceedings were prompted when allegations of sexual abuse and sexual risk involving A.B., the 12-year-old minor child of real parties in interest Ramona B. and Gregory B., were reported to child protective services. Family Services Specialist Kim Artist, employed by petitioner Clark County Department of Family Services (DFS), and Henderson Police Department Detective Amber Swartwood conducted a joint investigation to determine whether A.B. was in need of protection. The allegations, made by Ramona's daughter from a previous relationship and A.B.'s older half sister, Imani D., were that Gregory had sexually abused Imani when she was a minor living with Gregory and Ramona. As part of the investigation, A.B., Imani, Ramona, and Gregory, among others, were interviewed.

Following the investigation, DFS filed an abuse and neglect petition under NRS Chapter 432B in the juvenile division of the district court, seeking to have A.B. declared a child in need of protection. In its petition, DFS asserted that Gregory sexually abused Imani, and that Ramona had neglected both children by allowing A.B. to have unsupervised contact with Gregory and by failing to seek counseling for Imani once Ramona knew or should have known that Gregory had sexually abused Imani. A.B. was placed into protective custody, but was allowed to remain in the home with Ramona after Gregory agreed to vacate the family home and remain outside of the home during the adjudicatory proceedings.

An evidentiary hearing was conducted on the petition before a dependency master. The testimony at the hearing centered on statements made by Imani to investigators. During her testimony, Imani stated that she was having trouble getting along with her college roommate and felt self-conscious, and, because of those feelings, Ramona advised her to consult with a college counselor. It was during a counseling session that Imani discussed a wrestling incident with Gregory that occurred when she was approximately 13 years old, where Gregory allegedly touched her private parts. Imani testified that she felt uncomfortable after the incident with Gregory and that the family held a meeting the next day to discuss

what had happened. Imani testified that Ramona took her to a counselor after the incident, but neither Imani nor Ramona was able to testify as to the details of any counseling. At the hearing, Imani denied that she had ever told investigators or her college counselor that Gregory came into her room at night, grabbed her while she was in her bed, and made sexual demands.

Detective Swartwood and DFS Specialist Artist both testified as to Imani's statements made to them during separate interviews. Detective Swartwood testified that Imani had told her about the wrestling incident and that Imani stated that she had repeatedly asked Gregory to stop. Detective Swartwood further stated that Imani discussed other instances in which Gregory had tried to kiss her. Gregory and Ramona objected to the investigators' testimony as hearsay, and the master overruled their objections.

DFS Specialist Artist's testimony echoed that of Detective Swartwood regarding the statements made by Imani. DFS Specialist Artist also testified as to Ramona's statements indicating that she never took Imani to counseling, that she received a call from Imani the night before the investigation was initiated and that Imani was upset because she had discussed the incidents involving Gregory with the college counselor, and that she was worried that she would have to turn Gregory in to the police. Again Gregory and Ramona objected to the testimony on the grounds of hearsay.

Ramona testified as to the wrestling incident and how she spoke separately to Imani to learn if there were any other incidents in which Imani felt uncomfortable around Gregory. Ramona stated that Imani did not identify any other incidents. Ramona also testified that she and Imani attended counseling after the incident, but that she could not recall the number of times that they attended counseling. She further stated that following the present investigation, she suggested, and Imani agreed, to seek counseling. The family hired Dr. Marilyn Palasky to treat Imani and help her understand her feelings. Ramona stated that she attended several therapy sessions with Imani. Ramona also testified that it was her opinion that Gregory did not abuse Imani, and when asked what she based her opinion on, Ramona stated that Imani had told her that Gregory did not abuse her. Gregory did not testify at the hearing.

Gregory and Ramona's only witness was Dr. Palasky. Dr. Palasky testified that she had diagnosed Imani with schizoaffective disorder. She explained that such a disorder could cause a person to not properly match his or her behavior and demeanor with reality. Dr. Palasky further testified that she believed that Imani sometimes had difficulty differentiating between reality and what was occurring in her mind. She also testified that Imani told her

that she had been abused and felt uncomfortable at home. But Dr. Palasky noted that Imani's story was not always consistent and that Imani could not always remember specific details of the incidents, except that Gregory touched her private parts during the wrestling incident. Dr. Palasky noted that Imani was not bothered by that incident, but was troubled by her inability to deal with her roommate. She further stated that Imani never told her that Gregory would come into her room and try to kiss her or have sex with her.

Following the hearing, the dependency master filed her findings of fact, recommendation, and order of approval. The master found that DFS had met its burden and shown by a preponderance of the evidence that A.B. was a child in need of protection, as the dependency master found that Gregory had sexually abused Imani when she was a minor residing in Gregory and Ramona's home. The master further found that Ramona had neglected Imani and A.B. by not providing them with the proper care in light of Gregory's conduct.

After the master's findings of fact and recommendation were filed, Gregory and Ramona timely filed in the juvenile court an objection to the findings and recommendation. In their objection, Gregory and Ramona argued, among other things, that the dependency master abused her discretion by admitting the investigators' hearsay statements. DFS opposed the objection and argued that the testimony given by investigators was not hearsay because it was used to impeach Imani's testimony during the hearing, and even if it was hearsay, all hearsay is admissible in abuse and neglect proceedings under NRS 432B.530(3).

The juvenile court conducted a hearing on the objection and determined that the allegations relating to Imani had no merit and that there was no corroborative evidence to support the investigators' improperly admitted hearsay testimony. The court ultimately entered a written order sustaining the objection and dismissing the abuse and neglect petition. The juvenile court stated that, although NRS 432B.530(3) allows for all relevant evidence to be admitted, it does not ''require the Court to allow the admission of all hearsay reports.'' The court further noted that even if it were to admit all the hearsay statements, there still remained a lack of corroborative evidence to support a finding that Gregory had a sexual intent to touch Imani while they were wrestling or that Imani's statements to the investigators were reliable. As such, the juvenile court found that the dependency master's findings were clearly erroneous, and the court dismissed the abuse and neglect petition because it determined that A.B. was not a child in need of protection under NRS 432B.330. This petition for extraordinary writ relief followed.

## DISCUSSION

*Standard of review*

"A writ of mandamus is available to compel the performance of an act that the law requires as a duty resulting from an office, trust, or station or to control an arbitrary or capricious exercise of discretion." *International Game Tech. v. Dist. Ct.*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008) (footnote omitted); *see* NRS 34.160. Mandamus is an extraordinary remedy, and it is within this court's discretion whether a petition will be considered. *Cote H. v. Dist. Ct.*, 124 Nev. 36, 39, 175 P.3d 906, 908 (2008). It is well settled that this court may review a petition if there is "an important issue of law [that] needs clarification." *International Game Tech.*, 124 Nev. at 197, 179 P.3d at 559. Writ relief is generally not available, however, when an adequate and speedy legal remedy exists. NRS 34.170; *Pan v. Dist. Ct.*, 120 Nev. 222, 224, 88 P.3d 840, 841 (2004).

In this case, because the lower court's order arises from a juvenile proceeding and concerns child custody, it is not substantively appealable under NRAP 3A, and therefore, DFS's only remedy is by way of a petition for a writ of mandamus. *See Matter of Guardianship of N.S.*, 122 Nev. 305, 311, 130 P.3d 657, 661 (2006) (recognizing that a writ of mandamus is the appropriate remedy when challenging an order concerning child custody in a juvenile proceeding). Because this petition raises an "important legal issue in need of clarification, involving public policy," *International Game Tech.*, 124 Nev. at 198, 179 P.3d at 559, we exercise our discretion and consider this petition in order to address the standard of review governing a juvenile court's review of a dependency master's findings of fact and recommendations.

*Juvenile court's review of dependency master's findings of fact and recommendations*

In resolving this petition, we begin by examining the role of a dependency master in a juvenile proceeding and the proper function of the juvenile court when reviewing a master's findings of fact and recommendation.

In the Eighth Judicial District Court, dependency masters are routinely used to assist juvenile dependency judges in timely hearing abuse and neglect matters involving minor children. EDCR 1.45(a)(2); *see* NRS Chapter 432B; *see also* Nev. Const. art. 6, § 6(2)(a). A dependency master has "all the inherent powers of the

dependency judge subject to the approval of the dependency judge." EDCR 1.46(b). After a master hears a case, he or she must present the supervising judge with all the documents related to the case, along with written findings of fact and a recommendation as to resolving the matter. EDCR 1.46(g). "No recommendation of a master or disposition of a juvenile case will become effective until expressly approved by the supervising district court judge." EDCR 1.46(g)(9).

Once the written findings and recommendation are served, "a party, a minor's attorney, or guardian or person responsible for the child's custodial placement may file an objection motion" with the supervising judge. EDCR 1.46(g)(5). When an objection to a master's findings and recommendation is filed, the judge "will review the transcript of the master's hearing, unless another official record is pre-approved by the reviewing judge, and (1) make a decision to affirm, modify, or remand with instructions to the master, or (2) conduct a trial on all or a portion of the issues." EDCR 1.46(g)(7). "A supervising district judge may, after a review of the record provided by the requesting party and any party in opposition to the review, grant or deny such objection motion."[2] EDCR 1.46(g)(6). The final determination of the case rests with the juvenile court. *See* EDCR 1.46(g)(9).

This court has recognized that "[t]he constitutional power of decision vested in a trial court in child custody cases can be exercised only by the duly constituted judge, and that power may not be delegated to a master or other subordinate official of the court." *Cosner v. Cosner*, 78 Nev. 242, 245, 371 P.2d 278, 279 (1962). Thus, although a master has the authority to hear dependency cases and make findings and recommendations, a master does not

---

[2] Here, the juvenile court relied on NRCP 53(e)(2) to declare the dependency master's findings of fact clearly erroneous. The juvenile court's reliance on NRCP 53(e)(2) was unnecessary. NRCP 53(c) provides that an "order of reference to [a] master may specify or limit the master's powers and may direct the master to report only upon particular issues or to do or perform particular acts or to receive and report evidence only." But in juvenile dependency matters in the Eighth Judicial District Court, the powers delegated to dependency masters are specifically set forth, by rule, in EDCR 1.46(b). Thus, the juvenile court should have relied on the standard of review provided in EDCR 1.46(g)(7), rather than on the one provided in NRCP 53(e)(2), to guide its evaluation of the dependency master's findings of fact. This opinion does not limit the discretion of the district court when appointing special masters under NRCP 53, and all district courts maintain the ultimate right to control special masters' actions under NRCP 53(c), as well as the right to review special masters' actions.

possess the same powers conferred to a juvenile court judge through Article 6, Section 6 of the Nevada Constitution. As a result, only the juvenile court judge makes the dispositional decision in a matter. The judge may not transfer his or her judicial decision-making power to a master. *Cosner*, 78 Nev. at 245, 371 P.2d at 279.

This is not to say that the juvenile court should not give serious consideration to the master's findings of fact and recommendation. However, since the ultimate disposition lies with the juvenile court, the master's findings and recommendation are not binding on the court. On this point, the Maryland courts have developed a sound body of law that we find helpful in resolving the present case. *See Domingues v. Johnson*, 593 A.2d 1133 (Md. 1991); *In re Danielle B.*, 552 A.2d 570 (Md. Ct. Spec. App. 1989); *Wenger v. Wenger*, 402 A.2d 94 (Md. Ct. Spec. App. 1979); *Ellis v. Ellis*, 311 A.2d 428 (Md. Ct. Spec. App. 1973).

When reviewing a master's findings of fact and recommendation in a domestic relations case, Maryland takes a two-step approach. *Ellis*, 311 A.2d at 430. The first step involves the juvenile court reviewing the evidence and testimony presented to the master. *Id.* On review, the judge may order de novo fact-finding, or alternatively, the judge may rely on the master's findings when the findings are "supported by credible evidence and [are] not, therefore, clearly erroneous." *Wenger*, 402 A.2d at 97. This approach is similar to the procedures provided in the EDCR in that the juvenile court may conduct a trial de novo or approve a master's findings. EDCR 1.46(g)(7). Once the court determines the applicable facts, the second step used by the Maryland courts requires the court to exercise its independent judgment to determine, based on the facts and the law, the case's proper resolution. *In re Danielle B.*, 552 A.2d at 578; *Wenger*, 402 A.2d at 97.

With this framework in mind, we now address the merits of this petition and review the juvenile court's order to determine whether the court abused its discretion when it sustained the objection and dismissed the abuse and neglect petition.

*The juvenile court did not abuse its discretion when it found that A.B. was not a child in need of protection*

In its original writ petition, DFS argues that the juvenile court abused its discretion in dismissing the underlying abuse and neglect petition by determining that the hearing master's findings were clearly erroneous and setting aside the hearing master's factual findings.

As discussed above, the dependency master's findings must be carefully reviewed by the juvenile court, but a master's findings and recommendation are only advisory. *See Cosner*, 78 Nev. at 245, 371 P.2d at 279. The juvenile court is not required to rely on the master's findings, but if the court chooses to rely on the master's findings, it may do so only if the findings are supported by the evidence and not clearly erroneous. *Wenger*, 402 A.2d at 97. After reviewing the findings, the juvenile court is free to determine the applicable facts and to exercise its independent judgment in reaching a disposition. *In re Danielle B.*, 552 A.2d at 578; *Wenger*, 402 A.2d at 97.

Here, the juvenile court held a hearing on the objection and considered the parties' arguments. The juvenile court properly conducted an independent judicial review of the record before the master and found that "even if [it] were to admit the hearsay testimony of the Detective as to Imani's statement, there [was] a lack of corroborative evidence to indicate that Imani's statement to the Detective was reliable." Thus, regardless of whether the juvenile court excluded Detective Swartwood's testimony, the court's ultimate decision was that there was not sufficient evidence to support DFS's abuse and neglect petition.[3] We conclude that the record supports the juvenile court's decision and that the court acted within its discretion in sustaining the objection to the dependency master's findings and dismissing the NRS Chapter 432B petition. Accordingly, the juvenile court did not act arbitrarily or capriciously, and thus, the petition for writ of mandamus is denied.[4]

DOUGLAS and PARRAGUIRRE, JJ., concur.

---

[3]Because the juvenile court correctly held that sufficient evidence to support the petition would not exist even if the hearsay testimony was admitted, we need not address DFS's argument that the exclusion of this testimony as inadmissible hearsay was an abuse of discretion. Although the juvenile court misstated the law as to the admission of evidence in abuse and neglect proceedings, *see* NRS 432B.530(3), under these circumstances any error was harmless. NRCP 61 (stating that "[n]o error in either the admission or the exclusion of evidence . . . is ground for . . . disturbing a judgment . . . , unless refusal to take such action appears to the court inconsistent with substantial justice").

[4]Having considered DFS's remaining arguments, we are not persuaded that writ relief is warranted.