**131 Nev., Advance Opinion 30**

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| JENNIFER L., Petitioner, vs. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE FRANK P. SULLIVAN, DISTRICT JUDGE, Respondents, and THE STATE OF NEVADA; AND R.L., Real Parties in Interest. | No. 63176 |



FILED

JUN 04 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus seeking an order directing the juvenile division of the district court to dismiss the underlying neglect petition sustained against petitioner.

*Petition denied.*

David M. Schieck, Special Public Defender, and Abira Grigsby, Deputy Special Public Defender, Clark County,
for Petitioner.

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Jennifer I. Kuhlman, Chief Deputy District Attorney, Clark County,
for Real Party in Interest State of Nevada.

Gordon Silver and Paola M. Armeni and Puneet K. Garg, Las Vegas,
for Real Party in Interest R.L.

---

BEFORE PARRAGUIRRE, DOUGLAS and CHERRY, JJ.

 
15-17022

## OPINION

By the Court, DOUGLAS, J.:

Petitioner Jennifer L. seeks a writ of mandamus compelling the juvenile division of the district court to dismiss a neglect petition and finding of neglect entered against her. We take this opportunity to consider whether a parent may be held responsible for neglecting a child when a legal guardianship is in place over the child.[1] We conclude that even while a child is under an NRS Chapter 159 guardianship, the child's parents have a statutory duty to continue to care for the child, and parental responsibility for neglect may coincide with the guardianship.

## FACTS

Jennifer is civilly committed and resides in Wisconsin under a doctor's care. She has been diagnosed with schizoaffective disorder. A court order requires that Jennifer take her prescribed medication and see a caseworker.

Real party in interest R.L. is Jennifer's daughter. R.L. was residing in Nevada with her father, David L., and his wife, Evelyn, at the time of David's death in 2009. Evelyn cared for R.L. for a short time after David's death and was appointed R.L.'s guardian in December 2009. However, in May 2010, Evelyn terminated her guardianship and Evelyn's neighbor, Marjorie F., became R.L.'s legal guardian.[2] Thereafter, Marjorie

_____

[1]We decline to consider Jennifer's other contentions because we find they lack merit.

[2]Marjorie and Evelyn were appointed as guardians under NRS Chapter 159.

SUPREME COURT
OF
NEVADA

(O) 1947A

2

moved to California and left R.L. under the care of Brenda D. Although school documents identified Brenda as R.L.'s guardian, Brenda's guardianship was never legitimately established pursuant to NRS Chapter 159.[3]

While R.L. was residing with Brenda, she accused Brenda of battering her, encouraging her to sell marijuana, threatening to kill her if she called Child Protective Services, and spending her social security checks without providing for her basic needs. After R.L. resided with Brenda for three years, the Department of Family Services (DFS) removed R.L. The allegations against Brenda were unsubstantiated, but Brenda no longer wanted R.L. living in her home.

Subsequently, the State filed an abuse and neglect petition naming R.L. as a minor in need of protection pursuant to NRS Chapter 432B and asking the court to declare R.L. a ward of the court. The petition identified Jennifer and Marjorie as R.L.'s mother and legal guardian, respectively, and alleged that Jennifer's mental health issues adversely affected her ability to care for R.L. Marjorie was eventually removed from the petition, leaving Jennifer as the sole responsible party.

Jennifer entered a denial in response to the petition. She also filed a motion to dismiss the petition, arguing that no material facts were at issue because she had neither legal nor physical custody of R.L. and therefore could not be responsible for neglect.

---

[3]Marjorie thought she completed the proper paperwork to transfer temporary guardianship of R.L. to Brenda, but her actions were not legally recognized and Marjorie's guardianship was never terminated.

Supreme Court
of
Nevada

(O) 1947A

On October 31, 2012, an order of reasonable efforts was issued by the hearing master. The hearing master found that DFS made reasonable efforts pursuant to NRS Chapter 432B to prevent removal, including discussion with Jennifer about placing R.L. in her home. The hearing master further found that allowing R.L. to reside with Jennifer was contradictory to R.L.'s welfare.

On February 20, 2013, the hearing master issued a decision sustaining the allegations in the abuse and neglect petition and finding that Jennifer's anxiety and depression affected her ability to provide care for R.L. Among other findings, the hearing master found specifically that (1) Jennifer was receiving intensive in-home care; (2) Jennifer had a co-occurring diagnosis of schizoaffective disorder with delusions and alcohol dependence; (3) Jennifer had severe memory impairment, for which she was required by court order to take medication; and (4) when R.L. last visited Jennifer, R.L. took on the parent role. The hearing master found that it was in R.L.'s best interest to be adjudicated a child in need of protection pursuant to NRS 432B.330 and recommended that R.L. remain in the custody and control of DFS. The juvenile division of the district court adopted the hearing master's recommendation, finding Jennifer responsible for neglect because her mental condition prevented her from providing care for R.L. Jennifer's request to stay the proceedings pending a writ petition to this court was denied by the juvenile division of the district court.

## DISCUSSION

"A writ of mandamus is available to compel the performance of an act that the law requires . . . or to control an arbitrary or capricious exercise of discretion." *Cheung v. Eighth Judicial Dist. Court*, 121 Nev. 867, 868-69, 124 P.3d 550, 552 (2005). We exercise our discretion to

consider a writ petition "when there is no plain, speedy and adequate remedy in the ordinary course of law or there are either urgent circumstances or important legal issues that need clarification in order to promote judicial economy and administration." *Id.* at 869, 124 P.3d at 552 (internal quotation omitted).

Jennifer cannot substantively appeal from the juvenile division of the district court's abuse and neglect determination. *See* NRAP 3A(b)(7) (limiting appeals to orders finally establishing or altering child custody when proceedings *do not* arise from juvenile court); *In re A.B.*, 128 Nev., Adv. Op. 70, 291 P.3d 122, 126 (2012) (noting that the lower court's order arose from a juvenile proceeding and therefore was not substantively appealable under NRAP 3A). Moreover, this petition raises the important legal question of whether a parent may be responsible for abuse or neglect when parental rights have not been relinquished and a guardianship over the child pursuant to NRS Chapter 159 is in place. Thus, we exercise our discretion to consider the petition, reviewing the legal question presented de novo. *See Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 198, 179 P.3d 556, 559 (2008) ("Statutory interpretation is a question of law that we review de novo, even in the context of a writ petition.").

*NRS 159.079*

Jennifer argues that she cannot be responsible for neglect because Marjorie was R.L.'s guardian when the petition was filed. The State contends that NRS 159.079, the statute under which Marjorie's guardianship was established, does not relieve a parent from the duty to provide for the care, support, or maintenance of a child. The juvenile court

concluded that a guardianship need not be set aside for parental responsibility to exist. We agree.

"When a statute is clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of construction." *Cromer v. Wilson*, 126 Nev. 106, 109, 225 P.3d 788, 790 (2010). NRS 159.079(7) provides: "This section does not relieve a parent or other person of any duty required by law to provide for the care, support and maintenance of any dependent." Applying the plain and ordinary meaning of NRS 159.079(7) here leads us to conclude that, as R.L.'s natural mother, Jennifer continues to be responsible for R.L.'s care, irrespective of Marjorie's guardianship. Accordingly, Jennifer may be held legally responsible for neglect.

*Chapman*

Despite NRS 159.079's plain meaning, Jennifer contends that the instant case is similar to *Chapman v. Chapman*, 96 Nev. 290, 294, 607 P.2d 1141, 1144 (1980), where we determined that a parent could not be responsible for neglect when the child was left with someone known to be providing proper care for the child. According to Jennifer, R.L. had been receiving proper care from Brenda, and there is no dispute over that fact. On the contrary, that fact is disputed by both the State and the juvenile division of the district court; the facts established that Brenda was no longer willing or able to care for R.L. Thus, the juvenile court concluded that *Chapman* was inapplicable. We agree that the rule announced in *Chapman* does not apply here.

In *Chapman*, a child's father took custody and allowed his brother and sister-in-law, who were appointed as the child's legal guardians when the father died, to care for the minor. *Id.* at 291, 607 P.2d at 1142-43. The guardians then petitioned to terminate the mother's

parental rights. *Id.* at 292, 607 P.2d at 1143. The juvenile division of the district court granted the guardians' petition and found that the mother was an unfit parent and that she abandoned and neglected the child. *Id.* This court reversed that decision and determined that:

> NRS 128.014 defines a neglected child. As we read the statute, a finding of neglect must be based upon the treatment of the child while the parent has custody: neglect is not established when the child is left by the parent in an environment where the child is known to be receiving proper care.

*Id.* at 294, 607 P.2d at 1144 (footnote omitted) (citing *In re Adoption of R.R.R.*, 96 Cal. Rptr. 308 (Ct. App. 1971)).

Here, it may be true that R.L. was initially being properly cared for by her stepmother Evelyn and then by Marjorie. However, those circumstances changed when R.L. was residing with Brenda and reports of alleged abuse and neglect surfaced. Although the reports against Brenda were unsubstantiated, Brenda was no longer willing to provide care for R.L. Moreover, Jennifer was unable to provide care for R.L. due to her mental illness. Thus, at the time of the petition, R.L. was not receiving proper care, making this case distinguishable from *Chapman*.

Because *Chapman* is inapposite and NRS 159.079(7) explicitly preserves parental responsibility for a child, even when a guardianship is in place, the juvenile court properly sustained the neglect petition based

on Jennifer's inability to provide proper care for R.L. Accordingly, we decline to issue a writ of mandamus.

_____, J.
Douglas

We concur:

_____ J.
Parraguirre

_____, J.
Cherry