137 Nev., Advance Opinion 22

# IN THE SUPREME COURT OF THE STATE OF NEVADA

IN THE MATTER OF THE PARENTAL RIGHTS AS TO L.L.S., A MINOR.

No. 79124

FILED

MAY 27 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

TAHJA L.,
Appellant,
vs.
STATE OF NEVADA DEPARTMENT
OF FAMILY SERVICES; AND L.L.S.,
Respondents.

Appeal from a district court order terminating parental rights. Eighth Judicial District Court, Family Division, Clark County; Bryce C. Duckworth, Judge.

*Reversed and remanded.*

The Grigsby Law Group and Abira Grigsby, Las Vegas,
for Appellant.

Steven B. Wolfson, District Attorney, and Candice Saip, Deputy District Attorney, Clark County,
for Respondent State of Nevada Department of Family Services.

Lewis Roca Rothgerber Christie LLP and Abraham G. Smith and Daniel F. Polsenberg, Las Vegas; Legal Aid Center of Southern Nevada, Inc., and Dewey Fowler, Jr., Las Vegas,
for Respondent L.L.S.

BEFORE THE COURT EN BANC.

21-15207

*OPINION*

By the Court, STIGLICH, J.:

This case requires us to decide whether a hearing master may preside over a termination of parental rights (TPR) trial. The Nevada Legislature has provided that masters may preside over certain proceedings in the district court. In TPR proceedings pursuant to NRS Chapter 432B, the matter must be conducted by a "court." Under NRS 62A.180(2), a hearing master may constitute a court in this sense when the juvenile court delegates authority for the master to perform a role in accordance with the Nevada Constitution. Resolution of this appeal turns on whether having a hearing master preside over the trial in a TPR proceeding satisfies the due process requirements enshrined in the Nevada Constitution.

Balancing the fundamental importance of the rights at stake in a TPR trial and the profound consequences of an erroneous deprivation of those rights against the minimal value to the State of inserting an extra layer between the parties and the ultimate decision maker, we hold that due process requires the TPR trial to be heard before a district judge in the first instance. Central to this holding is our conclusion that when a trial takes place before a hearing master, a district judge's subsequent review of the trial record is not sufficient to safeguard the rights of the parent and child against the uniquely grave consequence of the permanent loss of parental rights. Because a master cannot preside over a TPR trial pursuant to NRS Chapter 432B without infringing on a parent's constitutional right to procedural due process, the master is not statutorily authorized to serve the role that the Legislature requires to be conducted by a "court." Rather, the district judge must perform that function. Accordingly, because the

 

juvenile court erred in delegating that role to a hearing master in the proceedings below, we reverse and remand for a new TPR proceeding.

## FACTS AND PROCEDURAL HISTORY

Appellant Tahja L. was still a teenager when she brought her then six-month-old daughter, L.L.S., into a Department of Family Services (DFS) facility. Tahja intended to temporarily place L.L.S. with DFS, pursuant to NRS 432B.360, while she completed her high school education. Tahja lacked the family and financial resources to care for L.L.S. and was concerned about her ability to provide adequate care for L.L.S. while attending school. A DFS representative explained child care options and the difficulties Tahja could face regaining custody should she surrender L.L.S. Tahja reiterated that she believed L.L.S. would be better off in DFS custody.

Shortly after Tahja surrendered her daughter, DFS filed a petition under NRS 432B.330 alleging that the child was in need of protection due to neglect. The matter was assigned to juvenile dependency Hearing Master David Gibson. Tahja pleaded no contest, and DFS placed L.L.S. in foster care outside the home. DFS designed a case plan to reunify Tahja and L.L.S. But DFS was dissatisfied with Tahja's progress under that case plan, and so it shifted the case plan from reunification to termination of parental rights and eventual adoption.

DFS sought to terminate Tahja's parental rights as to L.L.S. by filing a motion within the ongoing NRS Chapter 432B proceedings. Hearing Master Gibson was assigned to conduct the trial and to produce findings and recommendations regarding the TPR motion. L.L.S. objected that a district judge, not a hearing master, should conduct the trial. Tahja did not join this objection.

The juvenile court thoroughly considered L.L.S.'s objection and denied it by written order. The court held that it had the power to appoint any qualified person as a master and that it could order the master to conduct proceedings in the same manner as a district judge would, including taking evidence and making findings of fact and recommendations. It concluded that the TPR petition was brought under NRS Chapter 432B and that it had statutory authority to delegate the hearing to a master because the term "juvenile court" includes a master to whom the juvenile court delegates authority. *Cf.* NRS 62A.180(2). The court further considered Eighth Judicial District Court Rules contemplating the use of masters in juvenile dependency cases and the Eighth Judicial District Court's "one-family-one-judge" policy that required holding the TPR proceeding before the same hearing master previously assigned to the case. Lastly, the court concluded that NRCP 53, which governs the appointments of hearing masters in general, permitted the assignment, as the one-family-one-judge rule, limited judicial resources, and "best practices" constituted "exceptional conditions" justifying the appointment of a master.

Before the trial took place, however, Hearing Master Gibson was elevated to the bench, becoming District Judge Gibson. The clerk then reassigned the matter to Hearing Master Holly Roys. The master heard from several witnesses, considered the exhibits and orders filed in the NRS Chapter 432B proceedings, and recommended terminating Tahja's parental rights.

Tahja objected to Hearing Master Roys' findings and recommendations but did not specifically request a trial de novo. The juvenile court, through Judge Bryce C. Duckworth, held a hearing on the objection and offered the parties an opportunity to present additional

evidence, but the parties did not offer new evidence. After the hearing, the juvenile court entered an order rejecting Tahja's challenges and terminating her parental rights. The court noted that it—not the hearing master—held the sole constitutional power of decision.

By all indications, the court took its responsibility seriously. Although it took no new evidence, it conducted a thorough review of the record before it, including viewing the video of the entire trial proceedings. Judge Duckworth explicitly stated that he "observe[d] issues pertaining to the credibility and demeanor of each witness who testified." The court ultimately found, based on the record, that clear and convincing evidence supported the conclusion that termination of Tahja's parental rights was in L.L.S.'s best interests.

Tahja appealed. She now argues that the juvenile court lacked authority to appoint a master to preside over the trial in the TPR proceeding. L.L.S. agrees, consistent with her prior position.

## DISCUSSION

Both statutes and court rules may have a role to play in the inquiry into whether a master may hear a case.[1] But these statutes and

---

[1]We disagree with our dissenting colleagues and conclude that the issue was properly preserved for appeal. *See In re E.R. Fegert, Inc.*, 887 F.2d 955, 957 (9th Cir. 1989) ("There is no bright-line rule to determine whether a matter has been properly raised. A workable standard, however, is that the argument must be raised sufficiently for the trial court to rule on it." (internal citations omitted)); *cf. Schuck v. Signature Flight Support of Nev., Inc.*, 126 Nev. 434, 437, 245 P.3d 542, 545 (2010) (finding issue waived because "neither [the opposing party] nor the district court had the opportunity to address" it). It is true that Lujan did not join L.L.S.'s objection below to the use of a hearing master, and we generally decline to consider "point[s] not urged in the trial court." *Old Aztec Mine, Inc. v.*

SUPREME COURT
OF
NEVADA

(O) 1947A

court rules must be consistent with the constitution. The dispositive issue here is whether the proceedings before the hearing master, followed by the juvenile court's review, provided Tahja and L.L.S. with due process. We conclude that they did not. We do not fault the juvenile court's careful and thoughtful review of the record. But this sort of trial by video-recording is not congruent with the gravity of the rights at issue and is not justified by a sufficient state interest.

*A juvenile court is statutorily authorized to appoint a master if and only if the appointment is constitutional*

Tahja argues that the juvenile court lacked authority to appoint a hearing master to preside over the TPR trial. The Nevada Constitution allows the Legislature to "provide by law for . . . [r]eferees in district courts." Nev. Const. art. 6, § 6(2)(a); *cf.* NRCP 53(a)(1) (providing that referees are masters). The Legislature has repeatedly exercised this

---

*Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981). But this point was not only "urged" below, but also decided in a thoroughly reasoned order after a hearing. And as the juvenile court had already rejected the argument that the master was not authorized to preside, our conclusion is not affected by L.L.S. declining to reassert her challenge to the master's role after the master made her report. *Cf. Fuentes v. Shevin*, 407 U.S. 67, 94 n.31 (1972) ("[I]n the civil no less than the criminal area, courts indulge every reasonable presumption against waiver [of procedural due process rights]." (internal quotation marks omitted)); *Landes Constr. Co., Inc. v. Royal Bank of Can.*, 833 F.2d 1365, 1370 (9th Cir. 1987) ("As long as a party properly raises an issue of law before the case goes to the jury, it need not include the issue in a motion for a directed verdict in order to preserve the question on appeal."). The purpose of the waiver rule is to prevent issues from being raised for the first time on appeal. This ensures a proper division of trial and appellate functions, maintains judicial efficiency, and gives fair notice to other parties. *See Schuck*, 126 Nev. at 437, 245 P.3d at 544.

SUPREME COURT
OF
NEVADA

(O) 1947A

6

authority by enacting laws permitting masters to act as referees in district courts. *See Henry v. Nev. Comm'n on Judicial Discipline*, 135 Nev. 34, 36, 435 P.3d 659, 661 (2019) (recognizing the Legislature's constitutional authorization to provide for masters).

The Legislature, however, has provided that TPR proceedings under NRS Chapter 432B are to be conducted by the "court." *See generally* NRS 432B.5901-.5908. "Court," in NRS Chapter 432B, has the same meaning as "juvenile court" in NRS Chapter 62A. *See* NRS 432B.050. And under NRS 62A.180, a "juvenile court" includes a master only if "[t]he juvenile court delegates authority to the master to perform [a specific] act *in accordance with the Constitution of the State of Nevada.*" NRS 62A.180(2)(a) (emphasis added).[2] Accordingly, a master may constitute a "court" in this context and preside over a TPR proceeding only if the exercise of that authority does not violate a parent's constitutional rights.

As discussed below, having a hearing master preside over Tahja's TPR trial violated her right to due process. Therefore, the master did not perform that function in accordance with the constitution, and the master did not constitute a "court" for purposes of NRS 62A.180 and NRS 432B.5901-.5908. Consequently, a district judge, not a master, must

---

[2]The dissent's reliance on NRS 62A.180 and NRS 432B.050 is misguided. Its reasoning entails that a master would only constitute a court to which authority might be delegated after it had already received and exercised that authority. This circular reasoning cannot support disregarding whether its exercise accords with the state constitution. Relatedly, NRS 62B.030's statement of acts a master may perform is irrelevant, because such considerations arise only if the master may preside over a given proceeding. And the dissent's invocation of local court rules for an authority to delegate is no more persuasive, as the local rules cannot salvage the deficiency that the master is not statutorily a "court" here, as concluded below.

preside over the trial of a TPR proceeding conducted pursuant to NRS 432B.5901-.5908.

*Due process does not permit the juvenile court to delegate TPR trials to a master*

The Nevada Constitution states that "[n]o person shall be deprived of life, liberty, or property, without due process of law." Nev. Const. art. 1, § 8(2); *see also* U.S. Const. amend. XIV(1). In analyzing the analogous provision of the federal constitution, the United States Supreme Court has recognized the "fundamental liberty interest of natural parents in the care, custody, and management of their child" and explained that "[e]ven when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life." *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). Accordingly, "due process requires states to provide parents with fundamentally fair procedures in parental termination proceedings." *In re Parental Rights as to M.F.*, 132 Nev. 209, 212, 371 P.3d 995, 998 (2016).

This court applies the three-part test outlined in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), when we consider whether a TPR trial complied with due process. *In re Parental Rights as to M.M.L., Jr.*, 133 Nev. 147, 149-52, 393 P.3d 1079, 1081-83 (2017); *In re M.F.*, 132 Nev. at 213-14, 371 P.3d at 998-99. The *Mathews* test requires us to carefully "consider and balance (1) the parent's interest and (2) the risk of erroneous deprivation against (3) the government's interest." *In re M.M.L.*, 133 Nev. at 150, 393 P.3d at 1081. We review constitutional issues such as a parent's right to due process in a termination proceeding de novo. *In re M.F.*, 132 Nev. at 212, 371 P.3d at 997.

First, the parent's interest is as strong as can be. We have recognized the gravity of a TPR proceeding in particular, stating that "the

termination of parental rights is an exercise of awesome power that is tantamount to imposition of a civil death penalty." *In re Parental Rights as to A.L.*, 130 Nev. 914, 918, 337 P.3d 758, 761 (2014) (internal quotation marks omitted). Just as "there is no doubt that death is different" from other possible consequences imposed for criminal acts, *see Ring v. Arizona*, 536 U.S. 584, 605-06 (2002) (internal quotation marks and alteration omitted), there is no doubt that the permanent termination of parental rights is different from any lesser consequence of family-law litigation. Consistent with these principles, the Legislature has recognized that TPR proceedings are "a matter of such importance in order to safeguard the rights of parent and child as to require judicial determination." NRS 128.005(2)(a). Therefore, we conclude—as we have before—that "[a] parent's interest in the accuracy and justice of the decision to terminate his or her parental status is . . . a commanding one." *In re M.F.*, 132 Nev. at 213, 371 P.3d at 998 (quoting *Santosky*, 455 U.S. at 759).

In order to properly analyze the second and third factors, we must briefly review what a hearing master is and does. A hearing master is a person appointed by a court to preside over certain matters in place of a judge. A master is usually if not always an attorney. *See, e.g.*, EDCR 1.46(a)(3) (requiring juvenile hearing masters to be members in good standing with the State Bar). A master must of course be impartial, *see* NRCP 53(b)(3)-(4), and juvenile hearing masters are required to attend a course designed for the training of new judges, *see* NRS 62B.020(3). We have no doubt that masters are typically both competent and careful.

But no matter how neutral and qualified a master may be, it remains that he or she is not a judge and "does not possess the same powers conferred to a juvenile court judge through Article 6, Section 6 of the Nevada

SUPREME COURT
OF
NEVADA

(O) 1947A

9

Constitution." *In re A.B.*, 128 Nev. 764, 770-71, 291 P.3d 122, 127 (2012). Therefore, absent a stipulation of the parties, *see* NRCP 53(a)(2)(A), (b)(1), a master's findings are not binding and are subject to review by the court, *see* NRCP 53(f)(2)(A). While the judge should "give serious consideration to the master's findings of fact and recommendation"—if not, there would be no point in having a master at all—"[t]he judge may not transfer his or her judicial decision-making power to a master." *In re A.B.*, 128 Nev. at 771, 291 P.3d at 127.

Accordingly, after receiving a master's report, a juvenile court first "review[s] the evidence and testimony presented to the master." *Id.* While the judge may rely on the master's findings that are supported by credible evidence and not clearly wrong, the judge may also choose to order de novo fact-finding. *Id.*; *see* NRS 62B.030(4); NRCP 53(f)(2). "Once the court determines the applicable facts," it must then "exercise its independent judgment to determine, based on the facts and the law, the case's proper resolution." *In re A.B.*, 128 Nev. at 771, 291 P.3d at 127.

This two-step approach runs afoul of the second and the third prongs of the *Mathews* analysis. Regarding the risk of an erroneous deprivation, we find it troubling that when the juvenile court does not order de novo fact-finding, parents must argue their case and present evidence to a hearing master who does not hold the ultimate power of decision. The district judge, who holds that power, does not see the parties face-to-face but generally makes the decision based on evidence presented to another. Without disparaging the juvenile court's efforts in making an independent judgment, we think it is clear that inserting an additional layer of insulation between the litigants and the decisionmaker tends to lessen, not improve, the quality of the decision.

This does not mean that the use of masters is always or even usually invalid. As noted above, we presume that masters are competent, careful, and impartial and that district judges conscientiously review the record before them. In the great run of cases, the risk of an erroneous deprivation is likely to be eclipsed by the other two *Mathews* factors.

But turning our attention to that third factor, it is plain that this is not among the great run of cases. We conclude that, given the uniquely serious nature of TPR proceedings, the State's interests in using masters are insufficient to justify the use of a method of adjudication that is less reliable than a trial before the district judge in the first instance.

First, we consider the government's interest in efficiency, i.e., in avoiding the "fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *See Mathews*, 424 U.S. at 335. Relatedly, the government undoubtedly has an important "interest both in obtaining a speedy resolution and, more importantly, in protecting the child's best interests, including obtaining a permanent home for the child."[3] *In re M.M.L.*, 133 Nev. at 151, 393 P.3d at 1082. Accordingly, we have held that a district court is not necessarily required to grant a continuance in a TPR trial when the parent has been previously deemed

---

[3]The dissent misrepresents L.L.S.'s desires in suggesting that her sole concern is for a quick resolution of this case. L.L.S.'s brief makes plain her goal of preserving the parental bond. The dissent has mischaracterized her wishes by resting its characterization on one statement in her objection to the use of a master, taken out of context, without consideration of L.L.S.'s other representations.

And insofar as the dissent elects to discuss and reject several claims for relief that are not considered in or relevant to this disposition, such discussion need not be addressed further precisely because it is not material to resolving this appeal.

incompetent to stand for a criminal trial, as potentially indefinite continuances would prejudice those important interests. *Id.* Similarly, in *In re Parental Rights as to M.F.*, we held that a parent was not entitled to a jury trial, as opposed to a bench trial. 132 Nev. at 214, 371 P.3d at 999. We noted that "conservation of judicial resources" was a "compelling interest" weighing against requiring jury trials. *Id.* at 213, 371 P.3d at 998. It goes without saying that jury trials may be "complex and expensive." *See Aftercare of Clark Cty. v. Justice Court of Las Vegas Twp.*, 120 Nev. 1, 9, 82 P.3d 931, 936 (2004).

Those cases are distinguishable. Compared to the efficiencies obtained by denying indefinite continuances, or by holding a bench trial as opposed to a jury trial, we see little to no efficiency gained by having a master preside over a TPR trial. The juvenile court is still required to thoroughly review the evidence, including the possibility of de novo fact-finding, and to exercise its independent judgment. *In re A.B.*, 128 Nev. at 771, 291 P.3d at 127. Indeed, the facts here provide a striking example of the *inefficiency* of this two-step proceeding, as the district judge watched the *entire* trial recording in order to make a decision. By requiring the trial to initially take place before a master before review by a district judge, the litigation is often prolonged.

Of course, *if* the parties accept the hearing master's findings and recommendations, then the judge's review may be streamlined. In those cases, permitting masters to preside at a TPR trial may facilitate resolutions because searching judicial review is not required. Expeditious resolutions serve an important government interest. *In re M.M.L.*, 133 Nev. at 151, 393 P.3d at 1082. As we are well familiar with the Eighth Judicial

SUPREME COURT
OF
NEVADA

(O) 1947A

12

District's meteoric growth in population and docket congestion, we give this factor some weight.[4] But this does not outweigh the other *Mathews* factors.

Our confidence in this determination is strengthened by the Legislature's recent choice to increase the number of family court judges in the Eighth Judicial District from 20 to 26. 2019 Nev. Stat., ch. 483, § 4, at 2870 (amending NRS 3.0185). Certain comments made during the hearings on this statutory amendment are too salient to ignore. Specifically, the Chief Judge of the Eighth Judicial District Court told the Legislature that

> we are looking for three judges to *eliminate the use of hearing masters in the time-sensitive area of dependency.* This deals with kids who have come into the foster care system because their parents are unable to take care of them. We have excellent hearing masters; however, due to the structure, *when a hearing master makes a decision, there is an objection period, and that causes delays in an area where we really cannot afford to delay things for these vulnerable children.* We are therefore looking for three judges to replace those hearing masters, for a total of six new judges.

Hearing on A.B. 43 Before the Senate Judiciary Comm., 80th Leg. (Nev., June 2, 2019) (emphases added). These statements reinforce the conclusion

---

[4]We note that where no statute authorizes the appointment of a master, "[c]alendar congestion, complex issues of fact and law, and prospectively lengthy trials do not provide 'exceptional conditions' for a reference" under NRCP 53(a)(2)(C)(i). *Russell v. Thompson*, 96 Nev. 830, 835-36, 619 P.2d 537, 540 (1980). Where the Legislature expressly authorizes a referral to a master, relieving calendar congestion may be a valid state interest that should be considered under *Mathews*' third prong. Here, in contrast, relieving congestion is insufficient to justify a reference in a TPR trial, as the rights at stake are almost uniquely serious. We express no opinion as to whether it might suffice in a different class of cases.

that, as a practical matter, hearing masters do not in fact make the system significantly more efficient.

In summary, *Mathews* requires us to balance countervailing interests to decide whether the process afforded is commensurate with the importance of the interests at stake. Weighing the foregoing factors, we conclude that having a hearing master preside over the trial in a TPR proceeding violates due process. Even assuming without deciding that the need to relieve the court's docket congestion might justify the appointment of masters in other cases, termination of parental rights is different. TPR trials must be treated with the gravity and solemnity appropriate to the seriousness of their consequences. Assigning these trials to hearing masters, even when the results are reviewed by a judge, reflects an apparent view that these trials are less important and deserve less process. Nothing could be further from the truth.[5]

Accordingly, we conclude that the juvenile court violated Tahja's right to due process when it assigned a hearing master to preside over the TPR trial. As a result, the master did not qualify as a "court," *see*

---

[5]The dissent relies too heavily on the juvenile court's thorough efforts to review the record in this instance and pays insufficient heed to the sufficiency of the process in general for such proceedings. *Cf. Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 321 (1985) ("[T]he very nature of the due process inquiry indicates that the fundamental fairness of a particular procedure does not turn on the result obtained in any individual case; rather, 'procedural due process rules are shaped by the risk of error inherent in the truth-finding process as applied to the generality of cases, not the rare exceptions.'" (quoting *Mathews*, 424 U.S. at 344)); *Santosky*, 455 U.S. at 757 ("Retrospective case-by-case review cannot preserve fundamental fairness when a class of proceedings is governed by a constitutionally defective evidentiary standard.").

NRS 62A.180, and the trial was not held in compliance with the provisions in NRS Chapter 432B. *See* NRS 432B.5901-.5908.

## *CONCLUSION*

TPR trials involve determining whether to deprive a person of one of his or her most fundamental rights. While the Legislature has authorized juvenile courts to appoint hearing masters in many cases, it has expressly conditioned this authority on the constitutionality of the appointment. Therefore, we conclude that masters may not be appointed to preside in TPR trials. Accordingly, here, the district judge was required to hear the TPR trial in the first instance. While we commend the juvenile court for its efforts to analyze the record as thoroughly as possible, those efforts ultimately cannot cure this error. We reverse and remand for proceedings consistent with this disposition.

_____, J.
Stiglich

We concur:

_____, J.
Parraguirre

_____, J.
Silver

_____, J.
Herndon

PICKERING, J., with whom HARDESTY, C.J., and CADISH, J., agree, dissenting:

This court should affirm the district court's decision to terminate appellant Tahja L.'s parental rights as to respondent L.L.S. The district court referred the hearing on the termination of Tahja's parental rights to a master, and Tahja did not object. The evidence at that termination of parental rights (TPR) hearing showed that L.L.S., then not even three years old, had been in foster care for the preceding two years. Under NRS 128.109, this evidence triggered mandatory presumptions, both of parental fault and that termination was in L.L.S.'s best interests.

Tahja had counsel at the TPR hearing, yet despite this evidence and the statutory presumptions it raised, she called no witnesses and did not herself testify. Thereafter, the hearing master entered written findings and recommendations, which included a recommendation that the district judge terminate Tahja's parental rights. At that point, under NRS 62B.030(3) & (4)(c) and EDCR 1.46(g)(7), Tahja had the right to request a hearing de novo before the district judge. She did not do so, thereby waiving the right. She also declined the district judge's invitation to supplement the evidence.

On this record, no basis exists to reverse and remand for another TPR hearing in this long-running NRS Chapter 432B case. Not only did Tahja not object when the district court referred her case to the master, she subsequently voluntarily waived the very process that the majority now says she was due—the opportunity to present live witness testimony to a district judge. And, although the majority suggests otherwise, L.L.S.'s prehearing objection to the master presiding does not salvage Tahja's case. L.L.S.'s objection did not concern due process or

Tahja's interests; it spoke to L.L.S.'s interest in achieving permanency without risk of undue appellate delay. Nearly two years later, the majority's reversal and remand to repeat the TPR hearing all over again makes the child's feared risk a reality. Respectfully, I dissent.

I.

A brief review of the procedural facts provides helpful context. As the majority notes, respondent Clark County Department of Family Services (DFS) filed the motion seeking to terminate Tahja's parental rights as to L.L.S. under NRS 432B.5901, in Tahja's and L.L.S.'s ongoing NRS Chapter 432B abuse and neglect proceeding. Because the same juvenile dependency hearing master, David Gibson, had presided over the matter to that point, the supervising district judge also assigned Master Gibson to conduct the evidentiary hearing and make a report and recommendations to the district court on the TPR motion.[1] The order assigning Master Gibson advised that "each party is entitled . . . to request the termination of parental rights issue [be] heard before a District Judge . . . no later than 30 days from the entry of th[e] Order" and that failure to do so "constitutes a waiver of any claim that the assigned Hearing Master lacks the ability to hear your Termination of Parental Rights action." Notably, Tahja did not object to this assignment.

As discussed *infra* Part III, L.L.S. did file a timely prehearing objection to the notice of the master's assignment. After briefing, the district judge overruled L.L.S.'s objection, citing the Eighth Judicial District

---

[1]The district judge charged with supervising the Eighth Judicial District Court juvenile dependency and delinquency hearing masters in this case was at all relevant times Judge Bryce C. Duckworth, who entered the interim orders and final TPR judgment at issue here.

Court's one family/one judge policy and Master Gibson's deep familiarity with the parties, having presided over 14 of the parties' 15 NRS Chapter 432B hearings over the preceding two years. But before the evidentiary hearing occurred, then-Master Gibson was elevated to district judge, and the clerk assigned the matter to a new hearing master. Still Tahja did not object, L.L.S. did not renew her objection, and the hearing proceeded under the stewardship of the newly appointed master.

The master took testimony from multiple DFS witnesses and considered the exhibits and prior orders filed in the NRS Chapter 432B proceeding. Tahja called no witnesses and declined to testify, though the master advised her she had the right to do so if she wished. Following the hearing, the master entered written findings and recommended that the district court terminate Tahja's parental rights. Tahja objected to the findings and recommendations as "clearly erroneous," but *still* did not assign error in a master having presided over the evidentiary hearing; nor did she request a hearing de novo before the district judge, as NRS 62B.030(3) & (4)(c) and EDCR 1.46(g)(7) entitled her to do.

The district judge then set Tahja's objections for hearing. At the hearing, the district judge confirmed that the child, L.L.S., had not objected to the master's findings and recommendations and asked Tahja's counsel (and L.L.S.'s separate counsel) if either wanted to present supplemental evidence. *Both declined*, and the district judge took the matter under submission. A lengthy written order followed, in which the district judge recited that he had reviewed the entirety of the TPR hearing record—including the videorecorded testimony of six key witnesses. The order summarized the testimonial and written evidence, made the requisite findings of fact and conclusions of law, rejected Tahja's objections to the

master's findings and recommendations, and vested custody and control of L.L.S. in DFS with authority to place her for adoption.

Tahja timely appealed, *but still did not raise any due process challenge to the appointment of a master.* Instead, Tahja reasserts her challenge to the sufficiency of the evidence to support termination and raises, for the first time, a statute- and equal-protection-based challenge to the master having presided over the TPR hearing. Consistent with her oft-stated desire to avoid litigation delay, L.L.S. did not file a notice of appeal. As respondent, L.L.S. filed an answering brief purporting to support Tahja's request for reversal, to which DFS, as L.L.S.'s co-respondent, did not and had no right of reply.

## II.

Setting aside, for the moment, the unprompted due process analysis undertaken by the majority under *Mathews v. Eldridge*, 424 U.S. 319 (1976), there simply is no merit to the challenges Tahja raises on appeal—substantial evidence supports the district judge's TPR order, and the district court had statutory and rule-based authority to employ the master in the manner that it did.[2] For these reasons, this court should affirm.

---

[2]Tahja makes a third argument on appeal: She tried to voluntarily surrender L.L.S. to DFS under NRS 432B.360, so DFS should not have initiated a petition under NRS 432B.330. This argument fails because Tahja pleaded "no contest" to DFS's NRS Chapter 432B petition and did not tender the voluntary surrender issue to the district court. *See Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) (stating that a point not raised in the district court is generally "deemed to have been waived and will not be considered on appeal").

## A.

"A party petitioning to terminate parental rights must establish by clear and convincing evidence that (1) termination is in the child's best interest, and (2) parental fault exists." *In re Parental Rights as to A.J.G.*, 122 Nev. 1418, 1423, 148 P.3d 759, 762 (2006). Tahja argues that the district judge erred by finding that termination was in L.L.S.'s best interest and that parental fault exists. Because the termination of parental rights is "an exercise of awesome power," *In re Termination of Parental Rights as to N.J.*, 116 Nev. 790, 795, 8 P.3d 126, 129 (2000) (internal quotation omitted), this court "closely scrutinize[s] whether the district court properly preserved or terminated the parental rights at issue." *A.J.G.*, 122 Nev. at 1423, 148 P.3d at 763 (internal quotation omitted). But, when reviewing the district court's factual findings for substantial evidence, this court "will not substitute [its] own judgment for that of the district court." *Id.*

Here, the presumptions established by the uncontroverted evidence and the lack of rebuttal evidence afford little, if any, appellate leeway. As to the child's best interest, there is a presumption that termination is in her best interest when she has resided outside the home for 14 of 20 consecutive months. NRS 128.109(2). As to parental fault, under NRS 128.109(1)(a), there is a presumption that a parent is making only "token efforts" if a child is outside the home for 14 of 20 consecutive months. And under Section (1)(b) of the same statute, there is a presumption of failure of parental adjustment if that parent does not comply with the terms of the case plan within six months.

By the time the TPR hearing took place, L.L.S. had been continuously out of her mother's custody for 24 months, with only the briefest of exceptions, and caseworkers testified that Tahja made limited

progress on her case plan (more than 18 months after its adoption). Thus, the presumptions established by NRS 128.109 applied, including the presumption that termination is in L.L.S.'s best interest. "Once the presumption applies, the parent has the burden to offer evidence to overcome the presumption that termination of his or her rights is in the child's best interest." *A.J.G.*, 122 Nev. at 1426, 148 P.3d at 764. But Tahja did not testify at the hearing or present evidence or witnesses of her own. She relied instead on the witnesses DFS called, whose testimony established and largely supported the statutory presumptions as to L.L.S.'s best interest and parental fault (token efforts and failure of parental adjustment). Then, after the master submitted her findings and termination recommendation—citing NRS 128.109, the presumptions that DFS established under it, and Tahja's failure to rebut them—Tahja neither requested a hearing de novo nor accepted the district judge's invitation to supplement the evidence. With no request for a hearing before the district judge and no proffer of unadmitted evidence, Tahja is not entitled to a "do over."

B.

In their briefs on appeal, both Tahja and L.L.S. challenge the district court's statutory and rule-based authority to use a hearing master to take evidence and make findings of fact and recommendations in a contested TPR hearing. It is questionable whether this issue is even properly before us. Only Tahja filed a notice of appeal, and she did not question the master's assignment in any way, shape, or form in the court below. As for L.L.S., she did not file a notice of appeal. And, although L.L.S. objected to the initial order assigning the TPR hearing to then-Master Gibson, she did not object to the findings and recommendations, request a

de novo hearing, or file a notice of appeal. Nor did she return to the supervising district judge, Judge Duckworth, to ask that he reconsider his denial of her objection after Master Gibson became a district judge. This omission is significant because Judge Duckworth based his order upholding the assignment in significant part on the district court's one family/one judge policy and Master Gibson's having presided over the parties' NRS Chapter 432B proceeding from the start.

But, even apart from these waiver and preserved-error problems, the challenge still fails: Nevada statutes and court rules expressly authorize the family court division of the Eighth Judicial District Court to use hearing masters in juvenile dependency and delinquency matters, including contested TPR proceedings. DFS filed its motion to terminate Tahja's parental rights under NRS 432B.5901. Proceedings to terminate parental rights under NRS 432B.5901 through NRS 432B.5908 are conducted by the "court." The word "court," as used in NRS Chapter 432B, "has the meaning ascribed to it in NRS 62A.180." NRS 432B.050; *see* NRS 432B.010. And, by its terms, NRS 62A.180 defines "court" to include masters:

> 1. "Juvenile court" means each district judge who is assigned to serve as a judge of the juvenile court pursuant to NRS 62B.010 or court rule.

> 2. *The term includes a master who is performing an act on behalf of the juvenile court if:*

> (a) *The juvenile court delegates authority to the master to perform the act* in accordance with the Constitution of the State of Nevada; *and*

> *(b) The master performs the act within the limits of the authority delegated to the master.*

(emphases added).[3]

NRS 62B.020 specifies the training that a master of the juvenile court must complete. Addressing the scope of the delegation permitted, NRS 62B.030(1) permits the district court to order a juvenile court master to:

> (a) Swear witnesses.
>
> (b) Take evidence.
>
> (c) Make findings of fact and recommendations.
>
> (d) Conduct all proceedings before the master of the juvenile court in the same manner as a district judge conducts proceedings in a district court.

NRS 62B.030(3) and (4) lay out the processes whereby the parties can object and the district court must review the master's findings and recommendations, including the right of the parties "to request a hearing de novo before the [district] court" and the authority of the reviewing district judge to approve or reject the findings and recommendations, in whole or in part, to order such relief as may be appropriate, and "to direct a hearing de novo" upon timely request therefor.

---

[3]The majority parses NRS 62A.180 to support its argument that unconstitutional assignments are not legislatively authorized. But this goes without saying. A more reasonable reading of NRS 62A.180 is that the *delegation* must not amount to an unconstitutional abdication of adjudicative function to a nonconstitutional officer—an issue NRS 62B.030 and EDCR 1.45 and 1.46 obviate by the objection and review process they prescribe. *See In re A.B.*, 128 Nev. 764, 291 P.3d 122 (2012); *see also* discussion *infra* Part III.

In addition to the statutes just cited, the district court relied on EDCR 1.45 and 1.46 to support its referral of the TPR hearing to a master. These local rules authorize the Eighth Judicial District Court to appoint hearing masters in Clark County juvenile dependency cases, including proceedings to terminate parental rights, whether conducted under NRS Chapter 128 or NRS Chapter 432B. Thus, by its express terms, EDCR 1.45(a)(1) states: "The juvenile dependency division judge must . . . [s]upervise the activities of the juvenile dependency division hearing masters . . . *in the performance of their duties pursuant to NRS Chapters 432B and 128.*" (emphasis added). While NRS Chapter 432B addresses a range of juvenile dependency proceedings, NRS Chapter 128 solely addresses the termination of parental rights. EDCR 1.46(b) "derive[s] from NRS Chapter 432B" and authorizes dependency masters "to hear protective custody matters, pleas, *adjudicatory hearings*, [and] dispositions . . . followed by recommendations to the supervising dependency judge." EDCR 1.46(b)(1) (emphasis added); *see* EDCR 1.46(b)(3)-(9) (enumerating additional duties and powers). Under EDCR 1.46(g)(7), the district judge hears all objections to the master's findings and recommendations and may conduct a trial de novo. And EDCR 1.46(b)'s enumeration of powers "is not a limitation of powers of the family division dependency master. *The dependency masters have all the inherent powers of the Dependency Judge subject to the approval of the Dependency Judge.*" (emphasis added).

Though the majority opinion elides any mention of these Eighth Judicial District Court local rules, they have been in place—and approved by this court—for more than 40 years. *See In the Matter of the Adoption of New Rules of Practice for the Eighth Judicial Dist. Court of the State of Nev.,*

ADKT 30 (Order, December 18, 1980), Rule 1.46, at 8-9 (providing for juvenile court referees). This court adopted and approved EDCR 1.45 and EDCR 1.46 in their current form after the notice and public hearing required by NRS 2.120(2) and NRCP 83. *See In the Matter of the Amendment of Eighth Judicial Dist. Court Rules*, ADKT 418 (Order Amending Eighth Judicial District Court Rules, June 29, 2011) (amending, inter alia, EDCR 1.45 and 1.46); *cf. State v. Frederick*, 129 Nev. 251, 254, 299 P.3d 372, 374 (2013) (addressing EDCR 1.48, another standing referral rule, and its approval by this court).

By their plain terms, these statutes and court rules authorized the district court's referral order and its rejection of L.L.S.'s objection thereto. Nonetheless, Tahja and L.L.S. argue that the authorization only applies to other types of juvenile dependency matters, not TPR proceedings, and that without express legislative authority to use masters in TPR hearings, the referral violates the Nevada Constitution. They predicate their argument on this court's unpublished decision in *In re Parental Rights of K.J.B.*, Docket No. 71515 (Order of Reversal and Remand, Jan. 18, 2018).

*K.J.B.* was an appeal from a TPR order in an NRS Chapter 128 case. In *K.J.B.*, the district court referred the evidentiary hearing to a master and then adopted the master's findings and recommendations as its own. We reversed and remanded, citing article 6, section 6(2)(a) of the Nevada Constitution, which provides that "[t]he legislature may provide by law for . . . [r]eferees in district courts." *K.J.B.*, Docket No. 71515 (Order of Reversal and Remand, Jan. 18, 2018). Specifically, because "[t]he termination of parental rights is governed by NRS Chapter 128 and there is no statute within that chapter providing for the appointment of a referee or master," the court deemed the reference to a master unauthorized and

reversed and remanded for a new hearing before a district judge. *Id.* Of note, *K.J.B.* arose under NRS Chapter 128, not NRS Chapter 432B; the appellant in *K.J.B.* was proceeding pro se; and neither NRS Chapter 432B, EDCR 1.45, nor EDCR 1.46 was addressed.

As an unpublished disposition, *K.J.B.* does not establish mandatory precedent. *See* NRAP 36(c)(2). And, for purposes of this appeal, it is not necessary to resolve whether EDCR 1.45 and EDCR 1.46 authorize the referral of TPR petitions under NRS Chapter 128 to hearing masters[4]— by its terms, EDCR 1.45(a)(1) says that they do—but preservation issues aside, this appeal does involve whether NRS Chapter 432B, EDCR 1.45, and EDCR 1.46 authorize their use in TPR proceedings initiated under NRS Chapter 432B. They *plainly* do. And, to the extent *K.J.B.* suggests that the judicial branch needs explicit legislative authorization to refer matters to a master by order or court rule—beyond that already provided by NRS 62A.180, NRS 62B.020, NRS 62B.030, and NRS 432B.050—it is incorrect. Article 6, section 6(2)(a) was added to the Nevada Constitution in 1986 to *increase* the Legislature's authority: "The legislature *may* provide by law

---

[4]Tahja argues allowing referral to masters in NRS Chapter 432B but not in NRS Chapter 128 TPR proceedings violates her right to equal protection under the Fourteenth Amendment to the U.S. Constitution. The briefing on this issue is inadequate, and Tahja concedes rational basis review applies. An NRS Chapter 432B hearing master's presumed familiarity with the family and the prior proceedings on the antecedent petition to declare the child in need of protection is enough to clear this low bar, even though, in this case, the master familiar with Tahja and L.L.S. did not end up presiding over the TPR hearing. *See Sereika v. State*, 114 Nev. 142, 149, 955 P.2d 175, 179 (1998) ("If any state of facts may reasonably be conceived to justify [the legislation], a statut[e] . . . will not be set aside." (alteration in original) (quoting *State v. Eighth Judicial Dist. Court*, 101 Nev. 658, 662, 708 P.2d 1022, 1025 (1985))).

for . . . [r]eferees in district courts." (emphasis added). But neither the text nor the history of this provision supports that it *diminishes* the judiciary's preexisting and inherent authority to appoint referees and masters when appropriate. *See* Nevada Ballot Questions 1986, Nevada Secretary of State, Question No. 2 (noting as an argument for passage that "[t]he proposed amendment would allow the legislature to expand the use of referees to assist judges in district courts").

Tahja's and L.L.S.'s suggestion that the referral to the master in this case violated NRCP 53 also fails. As written at the time relevant to this proceeding, NRCP 53 referred only to special masters, appointed in a particular case for a particular purpose.[5] It did not address standing referrals under local rules such as EDCR 1.45 and EDCR 1.46. And, apart from the standing referrals in those rules, because the order overruling L.L.S.'s prehearing objection to the master referral relied on Master Gibson's extensive involvement in the prior proceedings and intimate knowledge of the case, it provided the exceptional circumstances required to justify referral to a special master under NRCP 53. Although Master Gibson was elevated to the district court bench before the hearing occurred, neither L.L.S. nor Tahja called the change in master to the attention of the district judge, so the NRCP 53 special master referral stands.

---

[5]The Nevada Rules of Civil Procedure were amended effective March 1, 2019. *See In re Creating a Comm. to Update & Revise the Nev. Rules of Civil Procedure*, ADKT 0522 (Order Amending the Rules of Civil Procedure, the Rules of Appellate Procedure, and the Nevada Electronic Filing and Conversion Rules, December 31, 2018). As amended, NRCP 53(h) expressly provides for "standing" masters, in addition to "special" masters.

III.

A.

As laid out above, Tahja offered no evidence or testimony in the original hearing before the master and then declined to pursue a de novo hearing or to present supplemental evidence before the district judge. Regardless of whether a TPR hearing before a master in the first instance is constitutionally adequate, a hearing de novo before the district judge by definition would have been. *See Hearing De Novo, Black's Law Dictionary* (11th ed. 2019) (defining the phrase as "[a] new hearing of a matter, conducted as if the original hearing had not taken place"). And, where such adequate procedures exist, a person cannot state a claim for denial of due process if that person has *elected to forgo* the same. *See Correa v. Nampa Sch. Dist. No. 131*, 645 F.2d 814, 817 (9th Cir. 1981); *see also Suckle v. Madison Gen. Hosp.*, 499 F.2d 1364, 1367 (7th Cir. 1974) (noting that "[j]udicial relief is not warranted where a plaintiff rejects a seemingly adequate hearing"); *cf. Riggins v. Bd. of Regents of Univ. of Neb.*, 790 F.2d 707, 712 (8th Cir. 1986) (noting, where a plaintiff chose not to file a grievance, that "[i]n so choosing, she waived any claim that the grievance procedure did not afford her the process she was due"). In short, Tahja was offered repeated opportunities to present her case, and in particular, the chance to participate in a de novo hearing before the district judge—the very same procedure that the majority seeks to impose on remand—but declined. Accordingly, and necessarily, no due process problems arose.

Moreover, the majority justifies its reaching and resolving the issue of Tahja's purported due process right to have a district judge preside over her TPR hearing in the first instance based on L.L.S.'s objection to Master Gibson's appointment in the district court. But this is error for two

SUPREME COURT
OF
NEVADA

(O) 1947A

13

separate reasons. First, one party's prehearing objection to proceeding before a master or magistrate does not excuse another party's post-hearing failure to avail herself of the opportunity to present live testimony before a district judge. Second, L.L.S.'s objections say nothing at all about due process. They stemmed solely from "the concerns expressed by the Supreme Court of Nevada [in] *In re K.J.B* [*see* discussion *supra* Section II.B]. . . . That and nothing more is [L.L.S.'s] basis." Specifically, L.L.S. worried that assigning the matter to a master could lead to "[a]n appellate challenge [that] will cause a significant delay in permanency, and delays in permanency are undeniably harmful." Sadly, these concerns have proven prescient. And, perhaps more troubling, the harm L.L.S. feared is now inflicted without need: Tahja's affirmative waiver and the unpreserved error take the due process issue that the majority tackles out of play; but, even if the record were otherwise, on the merits, I cannot agree that the referral to a master under the procedures in place in this case offended due process.

B.

Beginning on ground fully shared—there is no dispute that terminating parental rights profoundly affects the lives of the parties involved. *See, e.g., In re Parental Rights as to N.D.O.*, 121 Nev. 379, 384, 115 P.3d 223, 226 (2005). Still, this court has never before suggested that the weight of the private parental interests at issue categorically demands that the full scope of every judicial procedural protection must be in place. *See In re Parental Rights as to M.F.*, 132 Nev. 209, 215, 371 P.3d 995, 999 (2016) (holding that a TPR hearing is not a matter to which a right of jury trial attaches); *N.D.O.*, 121 Nev. at 384, 115 P.3d at 226 (recognizing that due process does not require an absolute right to counsel in a TPR

SUPREME COURT
OF
NEVADA

(O) 1947A

14

proceeding). Indeed, while the majority looks to the State's interest in appointing a master to hear TPR proceedings and reduces it to the "need to relieve the court's docket congestion," this both ignores the valuable familiarity a master may establish with parents and their child, *see Pacemaker Diagnostic Clinic of Am., Inc. v. Instromedix, Inc.*, 725 F.2d 537, 547 (9th Cir. 1984) (noting that "the legislature and the judiciary act responsibly when they provide and explore new, flexible methods of adjudication, especially where the evolution of the innovative mechanism is left in large part under the control of the judiciary itself"), and misunderstands the fundamental premise of *Mathews v. Eldridge*—which examines the private and public interests at stake in the underlying action as a whole, not in the implementation of the challenged process standing alone. 424 U.S. 319, 347-48 (1976) (noting that the public interest "includes" the administrative burden of increased procedures but that alone is not "controlling"). Accordingly, as this court has previously and repeatedly recognized, the State in fact has an interest of substantial importance in any TPR hearing, which aligns with that of the subject minor—namely, facilitating prompt and accurate decision-making so as to protect children from abuse and neglect and "ensure that they have a stable family life"—which interest "will almost invariably be [as] strong" as the parent's. *N.D.O.*, 121 Nev. at 384, 115 P.3d at 226; *see M.F.*, 132 Nev. at 213, 371 P.3d at 998 (stating that because "both [the State and the parent] have compelling interests, the analysis turns on an evaluation of the risk that the procedures used would have resulted in an erroneous decision").

Given the comparably weighted private and public interests in the TPR process, this court has previously assessed its fundamental fairness by looking to the third *Eldridge* factor—that is, the risk of an

erroneous deprivation of the private interest through the procedures used, 424 U.S. at 335—and closely examined the specific facts of the case in question pursuant thereto. *See N.D.O.*, 121 Nev. at 384, 115 P.3d at 226. Here, as to this factor, the majority seems to suggest that the risk of error in having a master initially hear the evidence stems from the district court's "insulation" from observing the witnesses first hand; as noted above, it is for this purpose that the majority remands.

"To be sure, courts must always be sensitive to the problems of making credibility determinations on the cold record." *United States v. Raddatz*, 447 U.S. 667, 679 (1980). However, under NRS 62B.030(3)(c) and EDCR 1.46(g)(5), a party has the right to object to the findings and recommendations of the master (which Tahja did, but L.L.S. did not). And, under NRS 62B.030(3)(d) and EDCR 1.46(g)(7), a party may request a hearing de novo before the reviewing district judge (which neither Tahja nor L.L.S. did). Taken together, these rules endow the district judge with broad discretion to review a master's findings and recommendations, which discretion would notably include its ability to hear the witnesses live should it need to resolve conflicting credibility claims. *See also In re A.B.*, 128 Nev. 764, 771, 291 P.3d 122, 127 (2012) (noting in the context of NRS Chapter 432B hearings that "[o]n review, the judge may order de novo fact-finding, or alternatively, the judge may rely on the master's findings when the findings are supported by credible evidence" (internal quotation omitted)). And with regard to Tahja's case in particular, the record was not necessarily "cold"—the district judge was able to review the videorecorded testimony of the witnesses in question. Moreover, and in any case, Tahja more than once passed on the opportunity to present any evidence to the district judge first hand.

The majority further suggests that the initial assignment of a TPR case to a master somehow offers a parent "less process." But this is fallacious. While generally the constitutional power of a final decision in child custody and other like matters "can be exercised only by the duly constituted judge, and . . . may not be delegated to a master or other subordinate official of the court," *A.B.*, 128 Nev. at 770, 291 P.3d at 127 (quoting *Cosner v. Cosner*, 78 Nev. 242, 245, 371 P.2d 278, 279 (1962)), the provisions discussed above avoid any such infirmity in this process: "[A]lthough a master has the authority to hear dependency cases and make findings and recommendations, a master does not possess the same powers conferred to a juvenile court judge . . . ." *Id.* at 770-71, 291 P.3d at 127. That is, "only the juvenile court judge makes the dispositional decision in a [juvenile dependency] matter." *Id.* at 771, 291 P.3d at 127; *see id.* at 770, 291 P.3d at 127 (citing EDCR 1.46 for the proposition that "[t]he final determination of the case rests with the juvenile court"); *see also* NRS 62B.030(4). And here, the district court followed *A.B.* and the applicable court rules and statutes by affording Tahja and L.L.S. the opportunity to object and to request a de novo hearing after the master offered her findings and recommendation and by reviewing the videorecorded evidentiary hearing proceedings.

Simply put, then, given the procedural protections laid out above and as applied, the district judge's review "serve[d] to enhance reliability and benefit [Tahja]." *Raddatz*, 447 U.S. at 684 (Blackmun, J., concurring). Put differently, Tahja was afforded procedures by which "a neutral decisionmaker [the master], after seeing and hearing the witnesses," rendered a decision against her. *Id.* Then, Tahja "received a second turn before *another* neutral decisionmaker [the district judge]," with

whom she had the option to present her case entirely anew (though, as noted, she affirmatively chose to rely on the record created before the master in the first instance). *Id.* (emphasis added). By invalidating the district court's long-standing hearing master program, the majority actually reduces the process potentially available to a parent. And, because "such a result would tend to undermine, rather than augment, accurate decisionmaking," it ought not to be embraced under the guise of due process. *Id.* at 685.

## C.

Finally, undertaking to define Tahja's due process rights on this record and these briefs is also unnecessarily high risk. While the majority does not directly address EDCR 1.45 and 1.46, its decision effectively invalidates their application in TPR cases and perhaps injects a question as to their continued viability in other cases as well. A better course would be to file an administrative docket petition to repeal or amend these rules as applied to TPR proceedings under NRS Chapters 128 and 432B. An ADKT forum would allow policy input from all stakeholders, avoiding uncertainty. And a rule change would operate only prospectively, without potentially jeopardizing past or pending decisions and throwing already-vulnerable children back into a state of uncertain impermanence. This point has special consequence in this case where L.L.S., the minor child, has only ever asked for one thing: permanence, without unnecessary delay.

## IV.

On this opaque record and without adequate briefing, we do not know and cannot say whether the failure to raise a due process challenge in district court or, in L.L.S.'s case, to continue to press her prehearing objection to the appointment of a master was strategic, not inadvertent—

SUPREME COURT
OF
NEVADA

(O) 1947A

18

that is, a course Tahja and her counsel and L.L.S. and her separate counsel intentionally established after careful deliberation. *Cf. Pacemaker*, 725 F.2d at 542 (noting that consent of the parties to a hearing by a magistrate rather than a judge "eliminates constitutional objections"). And reasonable minds may differ as to the wisdom of using masters in TPR proceedings. But "great knowledge is a temptation as well as a resource: a temptation to blur the separation of powers, to shift the balance between the . . . courts and state and local government too far toward the courts, and to disregard procedural niceties, all in fulfillment of a confident sense of mission." *United States v. Bd. of Sch. Comm'rs of the City of Indianapolis*, 128 F.3d 507, 512 (7th Cir. 1997) (Posner, C.J.). And procedural safeguards—including, for instance, those generally limiting precedential decisions to issues actually pursued by the parties—relate to the very due process the majority opinion purports to protect; such safeguards should be afforded. *See Jenkins v. State of Mo.*, 216 F.3d 720, 726 (8th Cir. 2000). And here, where the only objection voiced in district court came prehearing and concerned the risk of undue delay, not due process, the unfairness is palpable.

Perhaps, if the process offered to Tahja had abruptly ceased with a binding pronouncement by the master without an opportunity for the district court's review; perhaps, if Tahja had objected to the appointment of the master—whether Master Gibson or any other—at any time before the district court, or had done so cogently on appeal; perhaps, if Tahja or L.L.S. had requested a de novo hearing or to offer live evidence and been rebuffed; perhaps then the record could support that the TPR process established in the Eighth Judicial District Court decades ago and approved by this court

SUPREME COURT
OF
NEVADA

(O) 1947A

19

was not fundamentally fair. But this is not that case, and in this case, the record supports affirmance. Accordingly, I dissent.

_____, J.
Pickering

We concur:

_____, C.J.
Hardesty

_____, J.
Cadish

SUPREME COURT
OF
NEVADA

(O) 1947A